Mr. Justice Smith
delivered the opinion of the court.
At the October term of 1835, of the circuit court'of Wilkinson county, Samuel Woodsides, the prisoner at the bar, was tried and convicted of the murder of Hudson P. Lipscomb, and having received sentence, he has, by writ of error, removed his cause into this court, and asks a reversal of the judgment against him for several errors and irregularities, alleged to exist in the proceedings of the court below.
As the questions which are presented by the record, and which it will be necessary to determine, are disconnected and independent, we will pursue the order in which they stand in the assignment of errors.. It is insisted in the first place, that there is error in the record, because it is not shown that the court in which the prisoner was tried, was holden within the state of Mis *657 sissippi, nor where the jury were empannelled, or the indictment found. These objections are valid, and, if they exist in point of fact, would require a reversal of the judgment.
But the record shows conclusively that they are without foirnd-ation. The caption of the indictment sets out with certainty, each of these particulars. It is in the following words, to wit: “ The state of Mississippi, Wilkinson county, ss. The circuit court of Wilkinson county, October term, thereof, in the year of our Lord, one thousand eight hundred and thirty-five. The grand jurors of the state of Mississippi, empannelled and sworn, in and for the county of Wilkinson, and state of Mississippi, at the term aforesaid, in the name and by the authority of the state of Mississippi, upon,” &c. It is contended in the second place, that there is error, because it does not appear in the record, that a foreman of the grand jury was appointed by the court.
Assuming that it is necessary that the appointment of the foreman should appear upon the record, in order to confer validity upon the finding of a grand jury; we are of opinion that such appointment appears with the requisite degree of certainty. It is true, that it is not expressly stated that a foreman was appointed by the court., The record shows that fifteen persons were drawn according to the statute, from the jurors summoned for the first week of court and sworn and empannelled as a grand jury for the body of the county, of which Daniel Bass was sworn as foreman. This statement on the record, that Bass was sworn as foreman of the grand jury, necessarily implies his appointment as such by the court. And it is sufficient if that' which is omitted, be implied in common understanding from that which is expressed. 3 Bac. Abr. 574. But we understand that the administration of the oath required by the statute to be taken by the foreman of the grand jury, is in effect the appointment, and in fact the only appointment ever made by a court of the foreman of a grand jury.
The third objection is, that it does not appear that the grand jury were then and there sworn. This objection is answered by what is above remarked. It is also clear from authority, that the words “ then and there” need not appear in the caption, for if *658 it is by the record shown that the jurors were sworn, it will he sufficiently ■ intended that they were “ then and there’5 sworn. Chitty’s Crim. Law, 334; 3 Bac. Abr. 574. The fourth and fifth exceptions may be considered under the same head, and present the question of error in the decision of the court overruling the motion to quash the special venire.
Several grounds were assumed in support of the motion to quash the venire, "to wit:
1. That by. the precept of the writ of venire facias, the sheriff was not required to summon good and lawful men of his county.
2. That the writ shows a prosecution pending between the state of Mississippi, and Robert Woodsides, Alexander Wood-sides and Samuel Woodsides; and the jury were required to determine only, whether the said Samuel be guilty or not guilty of the crime whereof he stands charged.
3. That the writ does not bear test at the term next preceding that to which the same is made returnable.
4. That the return upon the said writ does not show at what time the jurors mentioned therein were summoned.
5. That the writ does not show upon whom the murder was committed, of which the prisoner stands charged.
In relation to the first ground, it was contended in the argument at bar, that the writ varies from the proper form arid necessarily violates the rights of the accused. The particular variance insisted on, is, that by the writ the sheriff was required to summon the jury “from the county,” and not “ of the county.” It is unquestionably the intention of the law that the accused shall be secure in his right of an impartial trial by a jury of his county; and if it could be shown that a precept to the sheriff, directing him to summon “ fifty good and lawful men from his county,” would authorise or require him to summon individuals as jurors, who were not of his county, the exception would be held valid. But as the writ is not varied according to common understanding or in its legal import by the insertion of the word “ from,” instead of the Avord “ of,” we cannot see that the objection has any validity whatever.
The second, fourth and .fifth grounds of objection to the venire *659 were not urged in argument, and as they do not constitute a defect in the venire which should induce this court to reverse the judgment of the circuit court, will not be particularly examined.
The objection that the writ which was issued to bring in the jury for the trial of the prisoner was not tested at the term next preceding that at which it was made returnable is equally without foundation. It is clearly not a writ contemplated by the 20th section of the circuit court law, Revised Code, p. 106, by which it is directed generally, that all writs or process shall bear test on the first day of the term next preceding that to which the same may be made returnable; and that all original process, and all subsequent process thereupon, to bring any person or persons to answer to any action, suit, bill, or complaint in any court in this state, shall be made returnable on the first day of the term next preceding that at which the same shall bear test, and shall be executed at least five days before the return day thereof; and that any writ or process, except as above described, which shall be issued within five days before the commencement of any term of a court., shall be made returnable to the term next after that to be held within five days.
The special venire in the case under consideration issued after the arraignment of the prisoner, and in term time, and if it be governed by the general provisions of the law regulating the test and return of process from the circuit courts, it should have been made returnable on the first day of the preceding term, and not as it was on a day within the term, at which it issued.
The authority to issue this writ, and to designate the time at which it is to be returned, vested in the circuit courts, as incident ■to their powers as courts of oyer and terminer at common law.
, The act of 1833, prescribing the mode of summoning and em-pannelling, in capital cases, was but declaratory of the powers which those courts before possessed, and imposed no' restriction, nor in any respect modified their authority as it then existed. But as the writ emanated during term time, it was properly tested at the commencement of the term. For if it be held that .the testing of the special venire is to be regulated by. the general law in regard to process, it should have been tested at the same time at *660 which it ought to have been, if made returnable at the preceding term of the court.
And there can be no doubt, under the law of the Revised Code, that process emanating during term time, and made returnable on the first day of the preceding term, should be tested oír the first day of the term at which it shall issue.
The next exception is taken to the ruling of the court below upon the demurrer to the prisoner’s challenge to the array.
A challenge to the array is 'an irregular form of pleading, by which the party excepts to all the jurors returned upon the venire, for some original defect in making the return thereto. 1 Chitty’s Crim. Law, 537.
It must relate, therefore, to the acts of the sheriff, or some other officer, and should charge him with a particular default or partiality in arraying the panel. Coke Litt. 156, A.
The array of the panel is the placing in order the names of the jurors who are returned for the trial of the issue. Coke Litt. 156, A. ’
The want of qualification in a juror placed upon the panel, or arrayed, is consequently no ground of challenge to the panel. This is conclusively shown from the fact, that the coroner may return the same jurors immediately after the array has been quashed for partiality or default on the part of the sheriff in making his return, or in arraying them. .
Anciently, it was held as good cause of challenge to the array, that a sufficient number of hundredors were not returned on the panel; but the want of qualification, which constitutes an objection to the polls, was never considered a cause of challenge to the principal panel. The causes assigned for the challenge in the case under consideration, are not predicated upon any default or act of partiality in the officer who returned the-venire. The court was, therefore, correct in sustaining the demurrer to the challenge.
The next objection is to the decision of the court overruling the motion in arrest of judgment. -Several of the reasons assigned in support of the motion, have been commented upon in the consideration which we-have seen to the third assignment of errors, and will in this place require no further elucidation.
*661 The indictment is alleged to be repugnant and inconsistent. And in support of this position, it is said that the “ time and place, as set forth, of the aiding and abetting on the part of the accessary is long subsequent to the time laid when the principal committed the act.”
It is stated in the indictment, that the wounds of which Hudson P. Lipscomb, the murdered individual, died, were inflicted on the 8th day of September, 1835; and “ that from said day he, the said Hudson P. Lipscomb, until the 13th day of September, 1835, 'in said Wilkinson county, did languish, and languishing did live, on which said 13th day of September, 1835, &c., he died; and the said Alexander Woodsides, then and there, &c., was present, aiding, &c., the said Samuel Woodsides, and Robert Woodsides, in the felony and murder aforesaid, in the manner and form aforesaid.”
In Catherine Graham’s case, (Leache’s Crown Law, 87,) which was referred to by counsel, the indictment contained two counts, charging two distinct felonies against the principals; and in the same indictment, Catherine Graham was charged as accessory after the fact, at common law, for harboring the principal felons, she well knowing that they had committed the felony aforesaid. Catherine Graham was convicted, and the judgment arrested; the court holding that it was uncertain to which of the felonies the charge referred.
Imthe case before us, there is but one offence with which the prisoner stood charged; and the allegations of the indictment in respect to that offence, are clear, distinct, and unequivocal; and upon the principle of the decision above referred to, although there might be uncertainty Avith respect to time in the charge against Alexander Woodsides, it would afford no ground for arresting the judgment against the prisoner at the bar.
But it does not appear to us, that this part of the indictment is obnoxious to the objection of uncertainty.
The indictment alleges, thát the said Alexander Woodsides, then and there, &c., was present, aiding, &c., the said Samuel Woodsides, and Robert Woodsides, in the felony and murder aforesaid, in the manner and form aforesaid, to do, and commit, &c. The latter part of the count explains the time to which refe *662 rence is made by the words “then and there.” The deed which terminated in the death of Lipscomb, was perpetrated on the 8th of September,-but he did not expire until the 13th of the same month.
The circumstances attending the murder, “ the manner and form” are stated; and it being alleged that the accessary was “ then and there” present, aiding, assisting “ in the manner and form aforesaid,” in the commission of the murder, there is no room for uncertainty, as to which of the antecedents reference is made.
The next error assigned, is to the judgment of the court overruling the motion for a new trial. But there is nothing on the record by which we can examine into the correctness of that decision. The testimony adduced on the trial, does not appear in it, nor do any of the grounds upon which the decision was predicated. The facts detailed in the affidavit of the prisoner, if they constituted a sufficient showing .to have required the judge to award a new trial, cannot be noticed by this court.
The party, in order to present the question of error in the decision of a court upon the competency and relevancy of evidence offered on the trial of a cause, or of any matter of fact, brought to the consideration of the court, not appearing by the pleading, should except to the opinion and embody the evidence or facts in the bill of exceptions. This not having'been done in the present case, we are bound to regard the judgment of the court upon the motion as correct.
The prisoner, when put upon trial, objected to being tried by the jury empannelled, upon the alleged ground that he had not been served with a correct list of jurors returned by the sheriff. The court overruled the objection: to which decision of the court, ■the prisoner by his counsel excepted; and filed his bill of exceptions in the following' words, to wit: “ Be it remembered, that on the trial of this cause, and during the progress thereof, Robert Semple was called as a juror, whose name appeared upon the panel: it also appeared upon the copy furnished the prisoner, that the name of Robert Semple was erased; and that without his name, there were fifty jurors named. In the original, there were *663 only fifty jurors named. The prisoner, by his counsel, objected to proceeding on the ground that a correct copy of the list of jurors' who were to pass upon his trial, had not been furnished him.”
The fact that the prisoner was not furnished with a correct list of the jury, who were to try him, is not directly stated in this bill of exceptions.
The facts presented to the court, and upon which it is to be presumed its decision was based, is, that the name of Robert Semple, who was one of the panel, appeared erased from the list which had been furnished to the prisoner, and that without his name, the copy or list contained the names of fifty jurors, the number which, by the award of the court, should have been summoned. But it is not stated, nor can it be inferred from the bill of exceptions, that the list, at the time it was presented to the prisoner, did not contain the name of Semple, or that without his name more than fifty were included.
But assuming that the bill of exceptions stated directly that the list referred to was the one which had been delivered to the prisoner, and that it was incorrect in not containing the names of all the jurors who had been summoned upon'the special venire, would the list itself, supported by the affidavit of the prisoner, affirming the identity of the list and denying that a true one had been delivered to him, have constituted evidence which the court should have regarded as conclusive of the fact that the prisoner was not notified, as the law requires, of the jurors who were to pass upon his trial?
The rule of evidence does not require the strongest possible evidence of the matter in contest, but only that evidence shall not be admitted, which from its character supposes a higher degree of evidence to exist. It is the duty of the sheriff as the ministerial officer of the court, upon making his return to the venire in any case where the party has been indicted for a capital offence, to deliver to the prisoner a copy of the indictment and a list of the jury, and to make a return thereof to the court.
If the sheriff, failing to deliver to the prisoner a list .and copy as required, or having done so, neglects to. make a return, it would be proper to inquire into the matter upon affidavit, or *664 otherwise upon suggestion to the court that such was the fact. 13 Johns. Rep. 529; 1 Munf. Rep. 269. But if the sheriff has returned that he has delivered to the prisoner a correct copy of the indictment and a list of the jury, the truth of such return we apprehend could not be collaterally questioned. The return of the sheriff that he has served the prisoner with a list of the jury, must be conclusive of the fact, as his return to any process issuing from thé court and properly directed to him. In the case of Stayton v. The Inhabitants of Chester, 4 Mass. Rep. 479, it was held to be “ clear that when a writ appears by the return, endorsed by the officer, to have been legally served, the defendant cannot plead in abatement of the writ by alleging matter repugnant to the return.” And when a writ is duly returned and filed, the return is so far evidence of the facts stated in it as not to be disputed incidentally; and hence, if .the sheriff return a rescue or a summons on a writ of scire facias, the parties cannot dispute it on affidavit. Norris’s Peak, 82; Phillips v. Hyde, 1 Dall. 439.
In the case under consideption, the officer’s return, which appears of record, shows that the prisoner was furnished with a list of the jurors. Upon the principle, therefore, that the return of the sheriff canot be questioned by alleging matter repugnant to it, the decision of the court overruling the objection of the prisoner must be regarded as correct.
An objection to the judgment of the court, overruling the motion for a new trial, although it is not properly presented by the record, will be noticed. It'is in effect this: that the declarations in extremis of the murdered person, as to the fact of murder, should not be admitted as evidence against the accused.
It is not denied that by the common law the declarations of deceased individuals, in prosecution for murder, made after the reception of the mortal wound, and under the declared apprehension of death, are admissible as evidence.
But the objection is rested upon the assumption that this principle of the common law has been abrogated by the 10th section of the bill of rights, which declares f£that in all criminal prosecutions the accused hath a right to be heard by himself and counsel, to *665 demand the nature and cause of the accusation, to be confronted by the witness against him, &c.”
This point was ably and ingeniously argued by the counsel for the accused, but we cannot assent to the proposition which is' sought to be established. The bill of rights, in respect to the right of the accused of being confronted by the witnesses for the prosecution, is but an affirmation of a long cherished principle of the common law. By the bill of rights the accused is secured in the right of an oral examination of the opposing witnesses, and of the advantages of a cross-examination. This privilege is placed beyond legislative action. The same right belongs to the subjects of England, but there they have no constitutional provision guarantying its perpetuity.
The argument proceeded upon the supposition that the deceased party was the witness, and as he could not be confronted or cross-examined by the prisoner, it was a violation of the prisoner’s rights secured by the sovereign will of the state, to allow the dying declaration of the deceased to be given in evidence.
But it is upon the ground alone that the murdered individual is not a witness, that his declarations made in extremis can be offered as evidence upon the trial of the accused. If he were, or could be a witness, his declaration, upon the clearest principle, would be inadmissible. His declarations are regarded as facts or circumstances connected with the murder, which, when they are established by oral testimony, the law has declared to be evidence. It is the individual who swears to the statements of the deceased that is the witness, not the deceased.
In the case of implied malice, the presumption of a malicious intent may arise from the weapon used in the perpetration of the deed. Thus if A, without any provocation or declaration of preconceived hatred, deliberately draw his sword and inflict a mortal wound upon B it will be murder; and theffiacj; that a weapon calculated to produce death was employed in the assault will be the circumstance from which the law presumes the 'existence of malice. Evidence applied to proceedings in courts of justice consists of those facts or circumstances connected with the legal proposition which establish its truth or falsehood. The use of *666 the weapon in the case supposed, is the fact or circumstance which establishes or manifests the criminal intention.
In a case where the declarations of the deceased are offered to the jury, they constitute facts or circumstances to which the law imparts verity, and tend to establish the truth of the matter to which they relate. The position, therefore, that the declarations of the deceased, in prosecutions for-murder, are not admissible as evidence to establish the murder, is wholly without foundation.
The sentence of death which was pronounced upon Hie prisoner at the October term of the circuit court of Wilkinson county, from some cause not appearing of record, was not carried into execution at the time appointed: he was therefore ordered before the same court at its March term in 1836, to have execution awarded on the judgment previously pronounced; at which time certain proceedings took place which it is not now important to notice; for if, in those proceedings, errors had intervened, it cannot affect the validity of the judgment which had been previously entered against the prisoner.
Having carefully examined every question presented by the record, and-having come to the decided conclusion that there is no error which can authorise this court to reverse the judgment of the court below, we have affirmed it.