Judge Simpson
delivered the opinion of the Court.
At the July term, 1852, of the Franklin Circuit Court, the appellant was indicted for the murder of Jeptha Montgomery. The prosecution having been transmitted to the Anderson Circuit Court, by change of venue, a trial was there had at the last April term of that court, when he was convicted of voluntary manslaughter, and sentenced to confinement in the penitentiary for the period of two years.
The prisoner has appealed to this court, and the matters relied upon to reverse the judgment, are:
1. The dying declarations of a person who is wounded, is clearly admissible e v i d ence against a person charged with homicide according to the English Common Law, and is not changed by our laws. (Greenleaf 'on Ev., 186.)
2. But to render dying declarations admissible, they must be made in ex-tremis, under a solemn sense of impending dissolution. In such a situation every motive to falsehood is presumed to be silenced and ev’ry motive to truth in lively exercise. Its credibility is, however, to be decided by the jury.
1. That the court improperly admitted the dying declarations of Jeptha Montgomery to be given in evidence against the prisoner.
2. The court erred in not arresting the judgment.
3. The court erred in allowing the Commonwealth the right of peremptory challenge.
4. The court oughtto have granted a new trial for the reasons assigned in the record.
1. The English authorities fullyestablish as a principle of the common law the admissibility of dying declarations as evidence; but it seems to be well settled that they are admissible as such, only in cases of homicide, “where the death of the deceased is the subject of the charge, and the circumstances of the death are the subject of the dying declarations.” The principle upon which they are admitted, rests upon the ground of public necessity to preserve the lives of the community, by bringing the manslayer to justice. (Greenleaf on Evidence, 186.)
The argument against their admissibility is, that they form a very dangerous description of testimony, made frequently under feelings of revenge, calculated to affect the truth and accuracy of the statements, and that the rule which admits them, not only deprives the accused of the right of cross-examination, but also of the constitutional right “to meet the witnesses face to face,” that are produced against him.
The answer to the objection made to the policy of the rule is that such evidence must, from the necessity of the case, be admitted to identify the accused, and to establish the circumstances from which the death resulted; otherwise, the guilty would frequently escape, where no third person witnessed the transaction, for the want of testimony to designate the perpetrators of the homicide, and to explain the manner in which it occurrred. And as these declarations, to be admissible, must be made in extremis, under a solemn sense of impending dissolution, it is considered that the constant expectation of immediate death will *35 silence every motive to falsehood, remove every feeling of revenge, and the mind will be induced by the most powerful considerations to adhere strictly to the truth; the awful situation of the individual creating, in legal contemplation, an obligation equal to that which is imposed by an oath administered in a court of justice. Besides, after the evidence is admitted, its credibility is entirely within the province of the jury, who have a right to consider all the circumstances under which the declarations were made, and to give the testimony such credit only as upon the whole they may think it deserves.
3. The rule o? law admitting dying declarations to be given in evidence against the accused in .trials for homicide, is not changed by any Constitutional provision of Kentucky— The Constitution does not change the rules of evidence which existed at its adoption, but only secures to the accused the right to confront the witnesses who may be i n t rodueed against him to prove such matters as were, according to the settled principles of law, evidence against him. The law determines the admissibility of testimony. The Constitution secures to the accused the right to confront the witness who details that testimony, face to face. (Wood-sides vs the State Miss. Howard’s Rep., 655; Anthony vs the State 1 Mág’s, 265.)
*35 The constitutional right of the accused to confront the witnesses against him is not impaired by this rule of evidence. The person who testifies to the dying declarations is the witness against the accused; and it is only by failing to discriminate between the witness and the testimony which he gives that the constitutional objection assumes the appearance of plausibility. The Constitution does not alter the rules of evidence, or determine what shall be admissible testimony against the prisoner, but it only secures to him the right to confront the witnesses who may be introduced to prove such matters as, according to the settled principles of law, are evidence against him. This objection, if carried out fully, would result in the rejection of all declarations, even where they constitute part of the res gestes. The law determines the admissibility of testimony — the Constitution secures to the accused the right to meet the witness who deposes face to face. But what, the witness, when thus confronted, shall be allowed to state as evidence, the Constitution does not undertake to prescribe, but leaves it to be regulated by tbe general principles of the law of evidence. When the declarations of the deceased are offered to the jury, they constitute facts in legal contemplation, which tend to establish the truth of the matter to which they relate. The position, therefore, that their admission as evidence infringes upon the constitutional right of the *36 prisoner to confront the witnesses against him; is wholly without foundation, and cannot be maintained.
4. The only-grounds upon which a judgment can be arrested in a criminal case, is that the facts stated in the indictmentdonotconstitate a public offense within the jurisdiction of the Court.— (Criminal Code, sec. 270.)
This constitutional provision has received a similar interpretation in the courts of other States, where it has been decided that it does not abrogate the common law principle, that the declarations in extremis of the murdered person, in such cases, are admissible in evidence. (Woodsides vs. the State, 2 How. Miss, (Rep. 655; Anthony vs. the State, 1 Meigs 265.)
The Circuit Court, therefore, did not err in the admission of this testimony.
2. The matters relied upon in the arrest of judgment were not such as a motion for that purpose can be based upon. It is expressly provided by the criminal code, (sec. 270.) that the only ground upon which a judgment shall he arrested, is that the facts stated in the indictment do not constitute a public offense within the jurisdiction of the court. No such cause is alleged to exist in this case, and if such an objection had been relied upon, it would have been wholly without foundation.
3. In considering the right of the Commonwealth to challenge any of the jurors peremptorily, it becomes necessary to decide whether the prosecution in this case, inasmuch as it was pending at the time the Criminal Code was adopted, should be regulated by the provisions of the Code, or by the previous law.
The preliminary provisions contained in the Code, which were intended to fix and determine this matter, are not so clear and explicit as might be desired. They are in the following language:
Sec. 1. “That the provisions of this act shall regulate the proceedings in all prosecutions and penal actions, in all the courts of this Commonwealth, from and after the first day of July, 1854, and shall be known as the Code of Practice in Criminal Cases.”
Sec. 2. “That all prosecutions or proceedings in *37 criminal or penal cases, which shall be commenced before the first day of September, 1854, and which, •by the existing laws,' would be valid, shall not be rendered invalid by this act, but may be prosecuted •to their conclusion, and enforced according to the existing laws, as if this acthad not been passed.”
5. The Criminal Code giviDg the right of peremptory challenge to the C ommonwealth in criminal cases applies as well to trials in prosecutions commenced before, as to those commenced after- the first day of September, 1854. (Criminal Code, sec. 1, 2 and 23, chap. 21, page 191.) This is not an ex post facto law. (Colder, el ux. vs. Butt, et ux. 3 Vallas, 386; 12 Wheaton, 480; 3 Grattan, 632.) The words ex post facto relate to crimes, and not to criminal proceedings.
*37 No express reference is made, in this last section to such prosecutions as were then pending, but they must be regarded as embraced by its provisions, notwithstanding the language used in it seems more properly to apply to such prosecutions as should be subsequently commenced, inasmuch as every reason which would require such an enactment for'the benefit of the latter would apply to the former with equal or greater force. Besides the language used is sufficiently comprehensive to embrace all prosecutions that should be commenced at any tíme before the first day of September, 1854, and we have no doubt the Legislature intended that the provisions of this section should apply to all such prosecutions whether they were commenced before or after the act took effect.
The first one of the foregoing two sections declares expressly that the provisions of the Code shall regulate the proceedings in all prosecutions and penal actions in all the courts of this Commonwealth, from and after the first day of July, 1854. The language is broad and comprehensive; it embraces all prosecutions and all courts. Had it stood alone, no criminal proceeding after the time mentioned could have been regularly carried on, unless it conformed to the provisions of the Code. To guard against any difficulty or inconvenience that might have resulted, if this requisition had remained imperative, in consequence of the ignorance in some portions of the State of the existence of the Code, and the nature of its provisions- — the second section provided that all proceedings in criminal cases, commenced before the period named therein, might be prosecuted to their conclusion according to the existing laws, and should *38 not be thereby rendered invalid. The right to proceed in such cases, under the previous law, is merely permissive; it is not however- exclusive, it does not conflict with the right to apply the provisions of the Code to such proceedings. If prosecuted according to the previous law, they shall not be rendered invalid by the act, although it expressly applies to them, and they may be regulated by its provisions. Such proceedings then may be prosecuted, either under the Criminal Code, or under the previous law, as the court may direct.
This construction of the act is fortified by the consideration that according to its terms it expressly applies to all prosecutions, without regard to the time the offense was committed. Previous offenses are not excluded from its operation, nor is any reference made to the time when the offense was committed. When, therefore, the law evidently embraces offenses theretofore committed, why should it be supposed that the Legislature considered the time when the prosecution was commenced of so much importance as to exempt from the opération of the act such as were commenced before its passage? It would be unreasonable to attribute to the Legislature an intention to attach more importance to the time the prosecution was commenced than to the time the offense was committed. If the Code is to apply to all offenses without reference to the time they were committed, why should it not equally apply to all prosecutions without reference to the time they were commenced? No substantial reason can be assigned, unless it be that its existence might be unknown, and consequently it might- be necessary to provide that if prosecutions were commenced and carried on under the previous law, they should not thereby be rendered invalid. To this extent only was it deemed necessary to exempt such prosecutions from the operation of the act.
This construction of the act seems also to be required by the 23d sec. &f the 21st chap, af the Revised *39 Statutes, page 191, which expressly provides that although a new law shall not be so construed as to affect any right accrued, or claim arising before it takes effect, yet that the proceedings thereafter had shall conform, as far as practicable, to the laws in force at the time of such proceedings.
The Criminal Code was the law in force when the appellant was tried and convicted. The prosecution against him, although commenced before it took effect, was expressly embraced by its provisions, and the statutory rule of construction, to which we have adverted, demanded that the proceedings thereafter had should conform, as far as practicable, to the law in force at the time of such proceedings. The inevitable conclusion then is, that the prosecution in this case might properly have been regulated by, and carried on under the provisions of the Code.
But it is contended that so much of the Criminal Code as gives to the Commonwealth the right of peremptory challenge, a right which did not previously exist, is to that extent, if applied to pending prosecutions for offenses previously committed, an ex post facto law, and therefore unconstitutional.
The Constitution of the United States, as well as that of this State, forbids the Legislature of any State to pass ex post facto laws. The Supreme Court of the United States, in the case of Calder and ux. vs. Bull andux., 3 Dallas, 386, has given an exposition of the clause in the Constitution of the United States which contains this prohibition; and Judge Chase mentions four kinds of laws which, in his opinion, would be embraced by it.
1. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action.
2. Every law that aggravates a crime, or malees it greater than it was when committed.
3. Every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed.
*40 4. Every law that alters the legal rules of evidence, and receives less or different testimony than the law required, at the time of the commission of the offense, in order to convict the offender.
The same Judge says that he does not consider any law ex post facto but those only that create or aggravate the ci’ime, or increase the punishment, or change the rules of evidence for the purpose of conviction.
We have not been referred to any authority by which this constitutional prohibition has been extended beyond the limits thus prescribed; nor any that has considered it as applicable to laws merely regulating criminal proceedings, or the mode of trial in criminal cases.
In what manner is the prisoner affected by the exercise of the right of peremptory challenge, on the part of the Commonwealth? It does not divest him of any right; although it may in its operation exclude from the panel some individual that he might desire to have upon the jury. It does not interfere with his right of peremptory challenge. An impartial jury is all that he is entitled to under the Constitution. It has no tendency to deprive him of this right. He cannot claim the right to be tried by a partial jury— one that may be inclined to favor his escape from justice. He has no right to select a jury, although the law permits him, to a limited extent, to reject such persons as he is unwilling to be tried by.
In the case of the United States vs. Marchant and Colson, 12 Wheaton's Reports, 480, the Supreme Court decided, that where two or more persons are jointly charged in the same indictment with a capital offense, they have no right to demand a separate trial. The claim to a separate trial was based upon the ground that they had a right to select a jury out of the whole panel, and that as upon a joint trial, one might desire to retain a juror who was challenged by the other, this right of selection was, upon such a trial, virtually impaired; butthe court decided that the right of peremptory challenge was not a *41 right to select, hut a right to reject jurors. It enabled the prisoner to say who should not try him, but not to say who should be the particular jurors to try him. It gave him the privilege of exclusion, but not of selection.
And the Supreme Court of Virginia, in the case of Pary vs. Commonwealth, 3 Grattan's Rep. 632, decided that an act of the Legislature which directed that thereafter in all prosecutions for offenses punishable by death or confinement in the penitentiary, the venire Jadas should command the sheriff or other officer charged with its execution, to summon twenty-four freeholders of his bailwick, residing remote from the place where the offense was supposed to have been committed, prescribed a new mode of selecting a jury, and reduced the number of peremptory challenges on the part of the prisoner, was not unconstitutional, although the act embraced prosecutions pending at the time of its passage.^
The court in this last case held that the words ex post facto, used in the Constitution, relate to crimes, and not to criminal proceedings; and that lessening the number of peremptory challenges did not deprive the prisoner of the right of being tried by the same law and the same rules of evidence that were in force at the time the offense was committed; and therefore the law was not unconstitutional.
If then a law that diminishes the number of peremptory challenges, to which the prisoner was previously entitled, is not an ex post facto law, it will hardly be contended that a law which declares that the Commonwealth shall be entitled to five peremptory challenges in prosecutions for felony, is of that character, and therefore unconstitutional. Conferring the latter privilege is evidently less disadvantageous to the prisoner than the deprivation of the former. It is a privilege too that leaves him the full exercise of his right to exclude from the jury such persons as may be objectionable to him.
Considering the nature and object of the prisoner’s *42 right of peremptory challenge, as well as the object and effect of the law in conferring a similar right (to a limited extent) upon the Commonwealth, it seems to us that the legitimate exercise of the former is not in any degree affected or impaired by the exercise of the latter; and that the only effector tendency of the exercise of the latter right is to procure an impartial jury to pass upon the guilt or innocence of the prisoner. Our conclusion then is, that the section of the Criminal Code which allows to the Commonwealth five peremptory challenges in prosecutions for felony, pending at the time- of its passage, is not an ex post facto law, nor otherwise unconstitutional.
The court therefore did not err in permitting the Commonwealth to exercise the right of peremptory challenge.
4. The error of the Circuit Court, if one was committed by it, in overruling the motion for a new trial, is not one of the errors for whieh, according to the 334th section of the Criminal Code, a judgment of conviction can be reversed. Upon a motion of this kind the action of the Circuit Court is final.
There does not, therefore, appear to be any error on the record to the prejudice of the appellant, -which will authorize a reversal of the judgment against him. And we would here remark that if the case was not embraced by the Criminal Code, and the proceedings therein should have been governed by the previous law, then, as this court had no appellate jurisdiction in such a case, under that law, the appeal could not have been maintained, nor the judgment been reversed by this court.
Wherefore, the judgment of the Circuit Court is affirmed.