## THE PEOPLE v. GLENN.

Evidence of the dying declarations of a deceased person, are admissible on a trial for murder.

The most substantial ground upon which the admission of such testimony can be placed, is that of *necessity*.

The verbal declarations of the deceased are admissible in evidence where the written declarations, signed by deceased, have been first introduced or their absence accounted for. Having done this, it is proper to admit proof of the fact that the deceased had, at different times, made the same statement.

The admissibility of such evidence is not a question for the jury.

Where a defendant's objection to the admission of testimony on the trial is *general*, he can not be permitted to make it *special*, for the first time, in this Court.

Where the Court below excluded from the jury evidence of threats, on the part of the deceased, against the life of defendant, and the record does not show the character of such threats, this Court will presume that such proof was properly excluded.

Such threats may have been made, and might have been conditional and justifiable.

APPEAL from the District Court of the Fifth Judicial District, County of San Joaquin.

The defendant was indicted for the crime of murder, tried, and convicted of manslaughter.

On the trial, and after the close of the testimony, the defendant asked the Court to charge the jury as follows, to wit:

" 1. That if they believe the deceased, Frank Brubaker, made an assault upon the defendant, with a deadly weapon, and that that weapon was a pistol, the defendant was justified in killing the deceased, Frank Brubaker.

" 2. That if the deceased, Frank Brubaker, made an assault upon the defendant, with a deadly weapon, under circumstances sufficient to excite the fears of a reasonable person, and that the party killing really acted under the influence of those fears, and not in a spirit of revenge, they must acquit the defendant.

" 3. That if they think, from the particulars of the state of mind, as disclosed by the behavior of the deceased on his death-bed, (Frank Brubaker,) that he was not likely to be impressed with a religious sense of his approaching dissolution, they may

disregard his dying declarations. You are the sole judges of all the testimony, and may give what credit you please to any part of it.

"4. That if they think, from the particulars of the state of mind of the deceased, Frank Brubaker, as disclosed by his behavior on his death-bed, that he was not likely to be impressed with a religious sense of his approaching dissolution, they must disregard his dying declarations." (Endorsed "refused.")

The first, second, and third instructions were given, and the fourth was refused. The jury returned a verdict "guilty of manslaughter."

The defendant moved the Court for a new trial, on the following grounds:

"1. Because said Court misdirected the jury herein in matters of law.

"2. Because the verdict herein is contrary to law.

"3. Because the verdict herein is contrary to evidence."

Which motion was denied, and the defendant appealed to this Court.

*Benham* for Appellant.

Dying declarations are inadmissible, because the statute requires the defendant to be confronted with the witnesses against him. Wood's Digest, 276. It is no satisfaction of the statute to confront him with the witness who rehearses the declaration, or in the case of a written one, who proves its execution.

If dying declarations are ever admissible, it is only in cases of necessity—that is to say, where there is no living witness. They are to be regarded as secondary testimony, the primary being that of living witnesses. It is true, there are cases where they have been admitted when there were living witnesses; but the great majority of the cases where such testimony has been resorted to, are cases where violence, producing wrath, has been done in secret. Penn *v.* Jas. Stoops, Addis R., 381; People *v.* Anderson, 2 Wheel. C. C., 408; Vass *v.* Comm., 3 Leigh, 786; cases cited in 1 Earl P. C., 353, *et infra;* Dingler's Cases, 2 Leach; 3 Phil., 255, n. 188.

That there was a living witness, was known to the government, because the dying declaration of Francis Brubaker disclosed it, and he had been examined by the grand jury which found the indictment. This witness was James Wene, and the law made him a witness for the government, notwithstanding the fact that he had married a sister of the defendant's wife. See *resume* of cases on this subject, Roscoe's Cr. Ev., 164.

1. Dying declarations have always been held subject to exceptions, which would have been good to the declarant if alive. Drummond's case, 1 Les. Ch., 337; Finklar's case, 1 East. P. C., 354; Pike's case, 3 Car. & P., 598. If they are secondary testi-

mony, they must be subject to the exceptions that it appears on their production that primary is in existence.

2. When a written dying declaration has been received in evidence, it is error to admit other oral dying declarations. All of the dying declarations were made under the operation of the same motions as must have governed where the written one was made, and consequently add no confirmation to the written one. They clearly add nothing to the uncertainty of the written one W. D. Evans in Notes to Pothier on Oblig., vol. 2, p. 251, cited by Roscoe, Cr. E., 184; 1 Phil. Ev., 290; 1 Green. Ev., 210, § 160.

3. It was error to refuse the fourth instruction asked for by defendant's counsel, because the law dispenses with an oath in a dying declaration, on the hypothesis that declarant is religiously impressed with his approaching dissolution. When Francis Brubaker permitted himself to say he thought Wene took part in the affray, he showed another want of the tenderness of conscience contemplated by the law.

4. The oral charge to the jury was error. It was the clerk's duty to send up the charge, if in writing, and not having done it, it must be presumed to have been oral.

If oral, consent not affirmatively appearing, it is error—for the power to charge orally is exceptional, and rests upon the preliminary consent. Balies' case, 8 Cal., 424.

5. Exclusion of Robert Brubaker's threats against defendant was error—for they tended to prove a conspiracy between the two deceased, and thus corroborate Wene and others, witnesses for the defence. Besides, he was found engaged in an effort to kill Glenn.

*Attorney-General* for Respondent.

The first, second, and third errors assigned, may be answered together, very briefly.

The dying declarations of a person *in extremis* are constantly admitted in criminal cases, when the death is the subject of inquiry, respecting the circumstances under which the mortal injury was received.

The rule grew up from the necessities of the case, as it often happened that the party slaying, by the very act which constituted the crime, obliterated or destroyed all evidence of his guilt. And it has been well considered, that when an individual is in constant expectation of immediate death, all temptation to falsehood, either of interest, hope, or fear, will be removed, and the awful nature of his situation will be presumed to impress him as strongly with the necessity of a strict adherence to truth, as the most solemn obligation of an oath, administered in a Court of Justice.

The rule has grown to be general, and applicable to all cases alike, whether there be other evidence or not.

Where the statement of the deceased is in writing, then the writing must be produced; but the fact that a statement was reduced to writing, does not preclude the proof of oral dying declarations made at other and different times.   And if a written statement is introduced, such parts of it, (if there be such,) as are not competent testimony, should be excluded by the jury, under instruction of the Court.

The general objection was insufficient.   An objection should have been specially made to the parts desired to be excluded. People v. Apple, 7 Cal., 289.

Wharton's Am. Crim. Law, pp. 247–253; Roscoe's Crim. Ev., pp. 27–37; Barbour's Crim. Law, pp. 55–57; Russell on Crimes, 2d vol., 752–766; Chit. Crim. Law, 569; Phillipps on Ev., 235; and the thousand or more cases cited in the foregoing text-books.

The part of the declaration in reference to Wene, was not objected to on the trial upon the ground now taken, and if it had been, there was no error, as Wene might properly have been connected, as a particeps criminis.

In answer to the fourth error, I must simply say that this is the first time in my life I have heard counsel, learned in the law, claim that the jury should be judges of the admissibility of the evidence.

As to the fifth, it is sufficient to say that the record fails to disclose a state of facts upon which to base it.

And for the sixth, there is no foundation.   The Court could not set aside the verdict, as the evidence sustained it.   And no error had been committed by the Court, as I show in the argument of the other points.

The seventh is answered by two serious objections to the testimony, which it was proposed to introduce:

1. It had not been shown that deceased was aware of or approved the threats.

2. It had not been shown that the prisoner had been informed of or was acting upon such threats.

The eighth and last is answered by the authorities which I have quoted, if counsel meant that the deceased should have been piously inclined during his last illness, and at such times as he believed himself in articulo mortis; the rule being, that if deceased was at the time a competent witness, and made the declarations under a sense of impending dissolution, they were proper evidence, without regard to his opinion of the future state.

BURNETT, J., delivered the opinion of the Court—TERRY, C. J., concurring.

The defendant was indicted for murder and convicted of manslaughter.

1.   The first point made by the counsel of defendant is, that

People v. Glenn.

the Court below erred in admitting in evidence the dying dec-
larations of the deceased, Francis Brubaker.   The learned coun-
sel maintains this point upon two grounds : *first*, that dying dec-
larations are inadmissible under our statute, which provides that
the defendant is entitled to be confronted with the witnesses
against him, in the presence of the Court; *second*, that conceding
that such declarations are admissible, they can only be received
in cases of secret crime, where there is no living witness.

The reasons for the admission of hearsay testimony in the
shape of dying declarations, in trials for murder, are very fully
stated in the treatises upon criminal law.   (2 Russell on Crimes,
752 ; Roscoe's Cr. Ev., 34.)   The most substantial ground upon
which the admission of such testimony can be placed, is that of
*necessity*.   It is true that the condition of the person making the
declaration in the last sad hours of life, under a sense of impend-
ing dissolution, may compensate for the want of an oath; but it
can never make up for the want of a cross-examination.   This
was very clearly shown in the case of Reason and Tranter.   (1
Str., 500.)

But, however unsatisfactory such evidence may be, the neces-
sity of the case has always induced the Courts to admit it; and
this exception to the general rule of testimony has been too
firmly established to be overthrown.   There would be the most
lamentable failure of justice, in many cases, were the dying dec-
larations of the victims of crime excluded from the jury.

The objection that this species of testimony can only be
admitted, if at all, in cases of secret crime, is not applicable
to the facts of this case.   It appears from the testimony that
there were only four persons present during the conflict.   These
were the defendant and his brother-in-law, Urin, and the broth-
ers Francis and Robert Brubaker.   It also appears that defendant
shot both the brothers, killing Robert instantly, and giving Fran-
cis a mortal wound, of which he died some fourteen days later.
From the testimony of Urin, he was not in a position to see, and
did not know who fired the first shot, Francis or the defendant.
As to the most material fact in the case, there was no living wit-
ness who could speak, and the dying declarations of the deceased
were properly admitted.   In the case of Reason and Tranter,
already referred to, the declarations were admitted, although
there was a witness outside the room in which the deceased was
killed, and who heard the blow given, but could not tell by whom
it was given.   So, in the present case, the deceased was inside
the house when he was shot by the defendant, while the witness
and defendant were on the outside, the defendant firing through
the door.

2. The next point urged by counsel for defendant is, that it
was error to permit the prosecution to prove the verbal declara-
tions of the deceased, similar to and confirmatory of his written

declarations under oath, *signed by him,* and attested by the magistrate before whom they were made.    These written declarations were made at a different time from the verbal, and were read in evidence to the jury.    Had the District Court permitted the prosecution to prove the verbal declarations of the deceased, *without* the production of the written, and without first laying the proper foundation for the secondary evidence, there would have been error.    (1 Greenl. Ev., § 161.)    But we can not perceive how the defendant was injured when the written declarations were first introduced, and the verbal declarations, made at a different time but of a similar import, afterwards admitted. In Reason and Tranter's case, verbal proof of the first and third declarations of the deceased were admitted, the prosecution not being able to produce the written proof of the second declaration.    In this case, the prosecution was bound to produce the written declarations, signed by the deceased; but having done so, it was proper to admit proof of the fact that the deceased had, at different times, made the same statement.

3.  The objection made by the defendant, in the Court below, to the admission of the written declarations of the deceased, was general, and not specific.    The defendant can not, therefore, be permitted to make an objection, for the first time, in this Court, · to the admission of a portion, only, of these declarations.    (The People *v.* Apple, 7 Cal. Rep., 289.)

4.  The refusal of the Court below to submit the question of admissibility of the dying declarations of deceased to the jury was no error.    The correct rule is clearly and concisely stated in Greenleaf on Evidence.    (§ 160.)

5.  There is nothing in the record to show that the Court charged the jury orally; and, in the absence of proof, we must presume that the Court below did its duty.

6.  There was no error in refusing proof of threats made by Robert Brubaker.    The record does not show what was the character of these threats.    They are simply stated to have been " against the defendant's life."    That might be true, and yet they may have been conditional and justifiable.    We are bound to presume that proof of them was properly excluded.

7.  There was no error in refusing the fourth instruction offered by defendant.    The third instruction asked by the defendant, and given by the Court, contained the true principle.    The fourth instruction substantially proposed to submit to the jury the question as to the admissibility of the dying declarations.

8.  There was no error in refusing a new trial.    The evidence was ample to sustain the verdict of the jury.    The dying declarations of Francis Brubaker were substantially confirmed by the other testimony in the case.

Judgment affirmed.