NOTE. — Durfee, C. J., and Matteson, J., did not sit in this case.

# NEWPORT COUNTY.

———◆———

## STATE *vs.* PATRICK WALDRON.

At the trial of an indictment for maintaining a liquor nuisance against Pub. Stat. R. I. cap. 80, §§ 1, 2, evidence was submitted by the State, under § 3 of that chapter, as to the "notorious character" of the place. The witnesses stated that the reputation of the place was bad; that they had heard persons say liquor was sold there, and gave the names of the persons, but admitted that those persons spoke only of and from reputation, and not from personal knowledge.

*Held,* that the evidence was rightly admitted.

*Held,* further, that Pub. Stat. R. I. cap. 80, § 3, allowing such evidence, did not violate the constitutional provision that "in all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him."

This constitutional provision excludes *ex parte* affidavits or depositions, and the written examinations made by coroners and committing magistrates. It does not exclude evidence of the fact of reputation. The witnesses who must confront the accused are the persons testifying against him, not those making or repeating statements about him.

EXCEPTIONS to the Court of Common Pleas.

*Providence, April* 14, 1888.    DURFEE, C J.    This case comes up from the Court of Common Pleas on exceptions.   It is an indictment charging the defendant with keeping and maintaining a liquor nuisance in violation of Pub. Stat. R. I. cap. 80, §§ 1, 2. The exception was taken to the admission of testimony of reputation under § 3.    The exception is stated as follows, to wit :

" The State asked all or nearly all of its witnesses to testify as to their knowledge of the notorious character of the place kept by the defendant.   In reply to these questions the witnesses stated that the reputation of the place was bad ; that they had heard many persons say it was a place where intoxicating liquors were kept for sale, and the names of a number of these persons were given.   Upon cross examination some of these witnesses admitted that the persons who had spoken of the place had spoken only of the reputation of the place as they had heard it, and none of this testimony showed that the people from whom the witnesses got their knowledge of the place's character or reputation spoke from their own personal knowledge as distinguished from reputation. To the admission of all this testimony the defendant objected, and also asked the court in its charge to the jury to instruct the latter to disregard the evidence of what the reputation of the place was. The court admitted the testimony, and refused to instruct the jury as requested, and to both rulings the defendant excepted, and now says that the same were erroneous."

The defendant does not deny that the testimony was properly admitted under § 3, if that section be valid ; but he contends that the section is void, because it conflicts with the Constitution of the State, article I. § 10, which secures to all persons prosecuted for crime the right " to be confronted with the witnesses against them ; " which provision, he contends, entitles them " to examine all persons by whose statements a fact in issue is to be proved." His contention is, that evidence of reputation as to a fact is only evidence of what third persons have said about the fact, and that therefore the State, instead of proving what they have said by others, should produce such third persons themselves to testify, so that the accused may see them face to face, and have an opportunity to cross examine them.   He urges that, if evidence of

reputation may be given as to one fact, it may be given as to every fact in issue, and that thus a man may be convicted of a grave offence by hearsay or common rumor.

In *State* v. *Wilson,* 15 R. I. 180, this court decided that similar · evidence of reputation was constitutionally admitted under § 3 ; but the question now raised was not then suggested, and the defendant is entitled to have it considered without prejudice. Manifestly, however, the fact that the question was not then, and hitherto has not been, raised, though the statute has existed for more than thirty years in a form under which it·could have been raised, affords a presumption against it. If the construction for which the defendant contends is legitimate, it is strange that it has not before been insisted upon.

We think there is no doubt that the primary purpose of the declaration of right was to secure the exclusion, not of hearsay testimony or evidence of reputation, but of *ex parte* affidavits or depositions or the written examinations of coroners and committing magistrates, and to oblige the government, instead of using them, to call the witnesses or persons by whom they were given. It is matter of history that such proofs were formerly much used. In the famous trial of Sir Walter Raleigh for treason, the evidence against him was a confession or examination of Lord Cobham, with whom he was accused of conspiring, before the privy council, and a letter written by Cobham afterward. Raleigh pressed to have Cobham called as a witness, so that he might confront and cross examine him, but the court refused him the privilege. Such a precedent could not fail to be availed of as authority for similar abuses. Mr. Justice Stephen, in his " History of the Criminal Law of England," vol. i. p. 350, says that, " in the criminal trials of the century preceding the civil war, . . . the witnesses were not necessarily confronted with the prisoner ; " and further, in the same volume, p. 358, " I know of no precise, clear authority for the proposition that a prisoner is entitled to have the witnesses against him examined in his presence, or that he is entitled to call witnesses or examine them upon oath, till long after the Revolution." Doubtless the right continued to be violated occasionally, both in England and in the colonies, long after it had been authoritatively recognized, and it is therefore not surprising that our ancestors, in

their ardor for personal as well as political rights, should have insisted on having it unmistakably affirmed by constitution or statute. It seems to have been transferred in this State from the statute book to the Constitution. Digest of 1798, p. 80, § 6; Digest of 1822, pp. 66, 67, § 2. And in this view the language of the declaration is apt, whereas in the view which the defendant urges it is not apt; since "the witnesses against" an accused person are, in customary speech, the persons who testify against him, not those who merely make or repeat remarks about him.

The defendant admits that in cases of homicide the dying declarations of the deceased are or may be lawfully admissible as evidence against the accused, but maintains that this is by force of an exception. But there is nothing in the declaration to warrant an exception, and courts are not accustomed to attenuate the force of unqualified constitutional mandates or declarations by engrafting exceptions upon them out of their own mere notion of what is best. Moreover, the decided cases do not countenance the view that dying declarations are admitted under any exception, but on the contrary hold that they are admissible because they were so at common law, and there is nothing in the constitutional declaration to shut them out. *Woodsides* v. *The State,* 3 Miss. 655, 665; *State of Iowa* v. *Nash & Redout,* 7 Iowa, 347, 377; *Anthony* v. *The State,* Meigs, Tenn. 265; 33 Amer. Decis. 143; *State* v. *Tilghman,* 11 Ired. 513, 554; *Burrell* v. *The State,* 18 Texas, 713, 731; *McDaniel* v. *The State,* 8 Sm. & M. 401; 47 Amer. Decis. 93; *Walston* v. *The Commonwealth,* 16 B. Mon. 15, 35; *Campbell* v. *The State of Georgia,* 11 Ga. 353, 374; *People* v. *Glenn,* 10 Cal. 32; *Commonwealth* v. *Carey,* 12 Cush. 246.

In *Anthony* v. *The State* the language of the court is: "The provision in the Bill of Rights was intended only to ascertain and perpetuate a principle in favor of the liberty and safety of the citizen, which, although fully acknowledged and acted upon before and at the time of the Revolution, had been yielded to the liberal or popular party in Great Britain, after a long contest, and after very strenuous opposition from the crown, from crown lawyers, and, if I may so speak, crown statesmen. The object was not to introduce a new principle, but to keep ground already gained, and to preserve and perpetuate the fruits of political and judicial vic-

tory." In *Campbell v. The State of Georgia* the court say : "The argument for the exclusion of the testimony proceeds upon the idea that the deceased is the witness, when in fact it is the individual who swears to the statements of the deceased who is the witness. It is as to *him* that the privileges of an oral and cross-examination are secured." And in *Walston* v. *The Commonwealth* the court say : " The constitutional right of the accused to confront the witnesses against him is not impaired by this rule of evidence. The person who testifies to the dying declarations is the witness against the accused ; and it is only by failing to discriminate between the witness and the testimony which he gives that the constitutional objection assumes the appearance of plausibility. The Constitution does not alter the rules of evidence, or determine what shall be admissible testimony against the prisoner, but it only secures to him the right to confront the witnesses who may be introduced to prove such matters as, according to the settled principles of law, are evidence against him."

Evidence of reputation, as shown by the common speech of people, may be admitted in criminal cases to impeach the witnesses for the defence, or, if the accused puts his own character in proof, counter testimony as to his reputation may be adduced for the prosecution. *Commonwealth* v. *Sacket*, 22 Pick. 394 ; *Regina* v. *Rowton*, Leigh & Cave, 520. In such cases, it is not the people whose utterances create the reputation who are the witnesses, but the persons who testify to the existence of the reputation. And so here it is the fact that the reputation exists which is put in proof, and the jury are left to determine its value as evidence, as they determine the value of any other fact which is proved against the accused. That legislatures, ordinarily, have power to change the rules of evidence, is perfectly well settled. Cooley Constit. Limit. § 366.

A word to the point that, if the General Assembly can make reputation evidence in cases like this, for the purpose specified, it can make it evidence in any case, for any purpose. The argument is that the power is a dangerous power for the General Assembly to have, and therefore that the court ought to decide, if possible, that it does not have it. The argument may have some weight where there is doubt, but it should not induce us to wrest words

from their proper meaning, since constitutions cannot guard, and do not undertake to guard, the powers which they confer from every possibility of abuse. Judge Story, in his Commentaries on the Constitution, points out the insufficiency of the clause of the Federal Constitution, containing the declaration in question, as a safeguard against dangerous legislation changing the law of evidence, which is left subject to legislative alteration. Story on the Constitution, § 1791. The great security against legislative abuses is that the legislators are responsible to their constituents, and consequently that no law which they may enact can long remain in force if it be incompatible with individual right. Moreover, the danger which can result from making reputation admissible as evidence is not likely to become very formidable so long as the right of jury trial remains, and juries are left to determine its value as evidence, untrammelled by statute.

*Exceptions overruled.*

*Clarence A. Aldrich,* Assistant Attorney General, for plaintiff.
*Charles Acton Ives,* for defendant.