State v. Moore.

### STATE v. HART MOORE.

1. A statute which repeals an act limiting the time within which crimes shall be proscribed, is not an *ex post facto* law, within the meaning of the federal or state constitution.

2. A person committed certain crimes at a time more than two years antecedent to the finding of an indictment, and at a time when the law barred the prosecution for such crimes by the lapse of two years; after two years had run and the prosecution was thus barred, the legislature repealed the act of limitation, and extended the time three years beyond the original limit. *Held*, such repeal and extension were valid.

Case certified from the Middlesex Oyer.

This was an indictment for embezzlement, &c., and was found in September Term, 1879, and at the trial the state was permitted to show criminal acts done within five years antecedent to the finding of such indictment. There was no pretence that the defendant had been a fugitive from justice.

Argued at February Term, 1880, before BEASLEY, CHIEF JUSTICE, and Justices VAN SYCKEL and DIXON.

For the state, *C. T. Cowenhoven* and *John P. Stockton, Attorney-General.*

In this case the guilt of the defendant is not denied; he seeks immunity from punishment for his crimes upon technical legal objections.

The principal question raised by the counsel for the defence is whether the act of March 14th, 1879, is, as applied to this case, *ex post facto.*

On the part of the state the definition or rule of an *ex post facto* law, as given by Judge Chase in the case of *Calder v. Bull,* 3 *Dall.* 390, is adopted.

It is respectfully submitted that this act is not *ex post facto.*

*First.* Because the act of the defendant was criminal at the time of its commission.

*Second.* Because the act does not aggravate the crime or make it greater than at the time of its commission.

*Third.* Because the act does not change the punishment, or inflict greater punishment than the law annexed to the crime when committed.

*Fourth.* Because the act does not alter the legal rule of evidence, and receive less or different testimony than the law required at the time of the commission of this offence, to convict the offender.

An *ex post facto* law is a law *operating after* the fact.

The constitution prohibits the legislature from passing an *ex post facto* law, for the reason that a person, to commit a crime under the common law, must have a criminal intent, which he could not have had if there was no law forbidding him at the time the act was done.

The reason, therefore, upon which the constitutional provision proceeds does not apply to this case.

If, then, this act is not an *ex post facto* law, is not the statute constitutional?

The legislative power is absolute unless restrained by the constitution.

Laws may be enacted which violate fundamental principles, may be unjust, oppressive, impolitic, divest vested rights, but they must be recognized as valid, unless they are *ex post facto* laws, or violate some constitutional provision prohibiting their enactment.

As before stated, an *ex post facto* law is a law operating after the fact.

These are the words of the constitution, and no court has a right to interpolate words which the framers did not insert therein. There is nothing here of vested rights; nothing extending a statute of limitations: nothing referring to the condition of the law at the time when a new law is passed, but the words are "*ex post facto*"—after the fact—that is, after the act has been committed.

The right to prosecute may, if it existed *at the fact*, be barred

Vol. XIII.                    o

by all the legislative devices imaginable; still, what one legislature did another may undo.

The same right to prosecute and the same punishments which were prescribed by the law of the state when the act was committed, may be availed of by the legislative power at any time afterward without making its enactment " *ex post facto.*"

Courts have no right to interpolate into the constitution of the state what was never written therein; they cannot make a part of the constitution any more than a whole one, and it has never been claimed that they can amend the constitution of this state or of the United States.

The legislative power is not in all cases permitted to take from a person vested rights. The constitutional provisions prohibiting the legislature, however, only apply to *civil* cases, never to *criminal* cases.

If the defendant, Moore, has a vested right to his liberty, to his property, and to everything else that he forfeited by his crime, the effect would be to protect him against a *civil* suit, but not against *criminal* prosecution.

A person can avail himself of vested rights in *civil* cases— he cannot in *criminal*—and the failure to make these distinctions is the fundamental weakness in the counsel's argument for the defence.

In *civil* cases it has been held, and it is believed correctly, that when the period of limitation has expired the rights of the parties have become vested, and the legislature cannot take away the vested right by removing the statutory bar.

But the question as respects the *criminal* prosecution is of a different sort; it has nothing to do with vested rights, but it concerns simply the provision forbidding *ex post facto laws.* *Bishop on Statutory Crimes,* § 265 ; *Pleasants* v. *Roher,* 27 *Wis.* 577 ; *Cassety* ·v. *Starnes,* 1 *Bush* 452.

A statute of limitations compels the state to prosecute the crime within a specified period, if at all, by withholding from the courts jurisdiction over the offence afterwards.

It has already been decided that if the legislature takes

State v. Moore.

away the jurisdiction so that no prosecution can be had, it may *revive the old,* or create a new jurisdiction, and *then,* though the right to prosecute *had once lapsed, the prosecution may be carried on under the new law.*

This is something pertaining not to the right but to the remedy.

And a statute authorizing a prosecution after the period of limitation had lapsed, would seem to come within this principle. It pertains to the remedy. It does not punish an act innocent when committed, or add to the punishment which the law then prescribed. *Bishop on Statutory Crimes,* § 266.

When, after the old law has been repealed, the legislature, by subsequent act, authorizes the proceedings, and by repealing the repealing statute in every such case, and *though the right to prosecute* should have once *lapsed,* a conviction may be had. *Bishop Crim. Law, vol. I.,* 165.

The statute that repeals a law under which a prisoner has committed an offence operates, in the language of Wilde, J., only as a *suspension of his liability,* and *not in the nature of a pardon. Com.* v. *Getchell,* 10 *Pick.* 452; *Com.* v. *Mott,* 21 *Pick.* 492; *State* v. *Dunkley,* 3 *Ired.* 116.

Whatever belongs merely to the remedy may be altered according to the will of the state, provided the alteration does not impair the obligation of the contract. *Bronson* v. *Kinzey,* 1 *How.* 315.

It may with equal propriety be said of laws affecting the remedy for crime:

That whatever belongs merely to the remedy, may be altered according to the will of the state.

A law which merely alters the criminal procedure may, with perfect propriety, be made applicable to *past* as well as future offences. *Lord's Journal, Oct. 30th,* 1690.

Before the court will deem it their duty to declare an act of the legislature unconstitutional, a case must be presented in which there can be no rational doubt. *Sup. Ct., Ex parte McCollum,* 1 *Cow.* 450; *People* v. *Huntington,* 4 *N. Y. Leg. Obs.* 187; *Clark* v. *City of Rochester,* 24 *Barb.* 446.

The constitution should be liberally construed in upholding the constitutionality of statutes. *People* v. *Board of Supervisors of Orange,* 17 *N. Y.* 235.

It is only on the ground of express constitutional provisions, limiting legislative power and controlling the temporary will of a majority by a permanent and paramount law, that courts of justice can declare void any legislative enactment. *Court of Errors,* 1838, *Cochran* v. *Van Surlay,* 20 *Wend.* 365; *Newell* v. *People,* 7 *N. Y.* (3 *Seld.*) 9, 109.

When the fundamental law has not limited, either in terms or by necessary implication, the general powers conferred upon the legislature, the court cannot declare a limit alone under the notion of having discovered something in the spirit of the constitution upon a subject which is not even mentioned. *People* v. *Fisher,* 24 *Wend.* 215; *Benson* v. *Mayor, &c., of Albany,* 24 *Barb.* 248.

Before proceeding to annul by judicial sentence what has been enacted by the law-making power, it should clearly appear that the act cannot be supported by any intendment or allowable presumption. *People* v. *Supervisors of Orange,* 17 *N. Y., supra.*

That the power of the legislature to interfere with vested rights is unlimited, save by the restrictions contained in the federal and state constitutions. *Butler* v. *Palmer,* 1 *Hill* 324; *People* v. *Supervisors of Westchester,* 4 *Barb.* 64.

The prohibition (in U. S. constitution) upon *ex post facto* laws applies only to laws respecting crimes. *Dash* v. *Van Kleeck,* 7 *Johns.* 477.

The act of March 14th, 1879, is not *ex post facto;* there is no constitutional provision prohibiting the legislature from enacting the same.

For the defendant, *A. V. Schenck.*

At the time of the passage of the statute in question—March 14th, 1879—(*Pamph. L.* 1879, *p.* 183,) the defendant was not liable to punishment for any act committed under the laws of this state.

He had not committed any criminal act within two years next before its passage, and consequently he came within the bar of the statute of 1874.

The counsel for the state on the trial put himself entirely on the authority of *Bishop on Statutory Crimes*, §§ 265, 266.

Mr. Bishop speaks of reviving prosecutions against which the statute has run. He says that such revival pertains not to the *right*, but to the *remedy*.

He does not cite a single authority in support of this *dictum*. It is believed that none such can in fact be found.

The only case cited by him (*State* v. *Sneed*, 25 *Texas, supp.*, 66,) was decided directly against his position, and all the adjudicated cases, as well as the analogy of the law, are opposed to his doctrine.

It is submitted that Mr. Bishop under the term "*remedy*" has confounded *mere modes of procedure*, and has thus infringed upon the substantial rights of persons accused of crime.

The true rule is given and the proper distinction is made by Judge Cooley. *Cooley's Const. Lim.* *272-3. He says: "But so far as *mere modes of procedure* are concerned, a party has no more right in a criminal than in a civil action, to insist that his case shall be disposed of under the law in force when the act to be investigated is charged to have taken place.

"*Remedies* must always be under the control of the legislature, and it would create endless confusion in legal proceedings if every case were to be conducted only in accordance with *the rules of practice*, and heard only by the courts in existence when its facts arose.

The legislature may abolish courts and create new ones, and it may prescribe altogether *different modes of procedure* in its discretion, *though it cannot lawfully*, we think, *in so doing, dispense with any of those* SUBSTANTIAL PROTECTIONS *with which the existing law surrounds the person accused of crime.* A law giving the government additional challenges, and another which authorized the amendment of indictments, have both been sustained as applicable to past transactions, as any similar law tending only to *improve* the remedy, but working no in-

justice to the defendant *and depriving him of no substantial right, doubtless would be.*"

Here the proper distinction is made between statutes affecting *mere modes of procedure*, and those affecting those substantial protections with which *the existing law* surrounds the person accused of crime.

And it is respectfully submitted that the statute in question in this case violates that fundamental principle.

" The power of the legislature to pass laws which retroact and take away the rights of persons accused of crime with respect to *their means and mode of defence*, must be limited to some extent by the provisions against *ex post facto* laws, or this constitutional restriction can be rendered practically nugatory by legislation *ostensibly affecting the procedure*." *Wade on Retroactive Laws*, § 285.

And the cases are numerous where the courts have interposed to prevent abridgment of substantial rights of the defendant by statutes under the guise of " modes of procedure." *Commonwealth* v. *Marshall*, 11 *Pick.* 350 ; *State* v. *Daley*, 29 *Conn.* 272.

I submit two propositions for the consideration of the court :

1. The statute of March 14th, 1879, as applied to this case now before the court, is an *ex post facto law.*

2. The statute of 1874, to which the statute of March 14th, 1879, is a supplement, operates as a *pardon before conviction*, as to all acts barred by the limitation thereof.

I.

As to the first proposition.

This statute subjects the defendant to *punishment* for an *act done before* the passage thereof, which was not punishable *at the time of the passage thereof.*

It is submitted that this comes within the *intent* and *meaning* of an *ex post facto* law, and within the spirit of the decisions on that subject.

State v. Moore.

What is an *ex post facto* law?

Blackstone defines it thus: "When after an action (indifferent in itself) is committed, the legislature then for the first time declares it to have been a crime, and inflicts a punishment upon the person who has committed it." 1 *Black. Com.* 46.

Mr. Hamilton, in *The Federalist*, No. 84, gives substantially the same definition. He says "The creation of crimes after the commission of the fact; or in other words, the subjecting of men to punishment for things which, when they were done, were breaches of no law, and the practice of arbitrary imprisonments, have been in all ages the favorite and most formidable instruments of tyranny."

The first discussion touching the judicial interpretation of the constitutional prohibition was, whether the same extended to civil as well as criminal cases. *Ogden* v. *Saunders*, 12 *Wheat.* 266, 286; *Satterlee* v. *Matthewson*, 2 *Peters* 416; *Note of Mr. Justice Johnson*, 2 *Peters* 681; *Dash* v. *Van Kleeck*, 7 *Johns.* 483, 488, 495, 505.

It was finally settled that the term was applicable to *criminal* matters alone. *Watson et al.* v. *Mercer*, 8 *Peters* 110.

And was so decided in this state in *Suydam* v. *Receivers of the Bank of New Brunswick*, 2 *Green's Ch.* 114.

But it is manifest that the definition of *ex post facto* laws given by Blackstone, did not and could not comprehend all statutes open to that objection.

Therefore a more enlarged definition or rule is given by Judge Chase in the case of *Calder* v. *Bull*, 3 *Dall.* 390.

1. Every law that makes an action done before the passing of the law, and which was *innocent when done*, criminal, and punishes such action.

2. Every law that aggravates a crime or makes it greater than it was when committed.

3. Every law that changes the punishment and inflicts a greater punishment than the law annexed to the crime when committed.

4. Every law that *alters* the legal rules of evidence, and re-

ceives less or different testimony than the law required at the time of the commission of the offence, to convict the offender.

And this definition has been substantially adopted by the elementary writers of this country.    3 *Story on the Const., p.* 212, § 1339; *Sergeant on Const. Law, ch. XXVIII., p.* 348; *Rawle on the Const., ch. X., p.* 115; *Sedgwick on Stat. and Const. Law* 557, 599; *Pomeroy on Const. Law, p.* 330, § 513.

But we find that even this definition is not broad enough to cover the adjudicated cases which come within the *reason* and *spirit*, but not within the *letter* of the definition.    And to which may be applied the maxim, " *Ubi eadem ratio; ibi idem lex.*"    *Broom's Leg. Max.* 114, 115.

Mr. Justice Field, in the case of *Cummings* v. *State of Missouri* (test oath case), 4 *Wall.* 325, says:

" The constitution deals with *substance*, not shadows.    Its inhibition was leveled at the *thing*, not the *name.*    It intended that the rights of the citizen should be secure against deprivation for past conduct by legislative enactment under any form, however disguised.    If the inhibition can be evaded by the form of the enactment, its insertion in the fundamental law was a vain and futile proceeding."

And Judge Chase, in *Calder* v. *Bull,* 3 *Dall.* 388, says:

" There are some acts which the federal or state legislature cannot do without exceeding their authority."    " They cannot change innocence into guilt."    Page 390 also:

" The plain and obvious meaning and intention of the prohibition is this : that the legislatures of the several states shall not pass laws *after a fact done* by a subject or citizen, *which shall have relation to such fact* and *shall punish him for having done it.*"

" The prohibition, considered in this light, is an additional bulwark in favor of the *personal security* of the subject, to protect his person from punishment by legislative acts having a retrospective operation."

The court, in *Ogden* v. *Saunders,* 12 *Wheat.* 286, uses this language:

" The purport of the clause would be that the states shall

State v. Moore.

pass no law attaching to the acts of individual *other effects or consequences* than those attached to them by the laws *existing at their date."*

In the case of *Fletcher* v. *Peck,* 6 *Cranch* 138, Chief Justice Marshall says :

" An *ex post facto* law is one which renders an act punishable *in a manner* in which it was not punishable when it was committed ; such a law may inflict penalties on the person, or may inflict pecuniary penalties which swell the public treasury."

In speaking of this definition of *ex post facto* law, Judge Kent says, (1 *Kent's Com., Lecture XIX., pp.* *408, *409):

" It extends to laws *passed after the act,* and affecting a person by way of punishment of that act either in his person or estate."

And the same definition has been adopted by Bouvier, (*Law Dic., tit. " Ex Post Facto,"*) who says :

" This definition extends to laws passed after the act and affecting a person by way of punishment of that act either in person or estate." *State* v. *Sneed,* 25 *Texas* (*supp.*) 66 ; *Case of Riley,* 2 *Pick.* 172 ; *In re William Murphy,* 1 *Woolw. C. C.* 147, (*Dist. of Missouri,* 1867) ; *State of Maine* v. *Doherty,* 60 *Me.* 504 ; *Commonwealth* v. *Edwards,* 9 *Dana* (*Ky.*) 448 ; *Flaherty* v. *Thomas,* 12 *Allen* (*Mass.*) 428 ; *State* v. *Keith,* 63 *N. C.* 143 ; *Hartung* v. *People,* 26 *N. Y.* 167, (12 *Smith Court of Appeals*) ; *Martin* v. *State,* 22 *Texas* 214 ; *Coffin* v. *Rich,* 45 *Me.* 514.

## TO RECAPITULATE.

This statute—

1. Punishes an act which was not punishable as a crime at the time of the passage thereof.

2. It is a law passed after a fact done by a citizen, which has relation to such fact, and punishes him for having done it.

3. It is a law passed after the act, and affects a person by way of punishment of that act both in person and estate.

And is, therefore, an *ex post facto* law, unconstitutional and void as to this defendant.

But this statute may be void as to this case, and valid in its application to other cases. *Golden* v. *Prince*, 3 *Wash. C. C.* 313.

As in cases where the bar of the statute of 1874 had not attached when the statute of 1879 was enacted or took effect.

In civil cases there is a plain distinction where the time of limitation *has expired* and where it *has not expired*, at the time of the passage of the law *extending the time* of limitation.

In the former case, where the *right* has become *vested*, it is settled that such legislation would be inoperative. *Cooley's Const. Lim.* (3d ed.) \*365; *Angell on Lim.*, *pp.* 18, 19, § 11; *Pomeroy on Const. Law*, *p.* 403, § 618.

And in *Ryder* v. *Wilson's Ex'rs*, 12 *Vroom* 9, this court decided that " when the right of action had become barred under a statute of limitations, the statutory defence *is a vested right* that cannot be impaired by subsequent legislation."

To the same effect is the case of *Hunt* v. *Gulick*, 4 *Halst.* 205.

In *Woodman* v. *Fulton*, 47 *Miss.* 682, the court says :

" The bar created by the statute of limitations is as effective after it attaches as payment or any other defence. And it is not competent for the legislature to remove the bar."

In *Merrill* v. *Sherburne*, 1 *N. H.* 214, Woodbury, J., says :

" The power that authorizes or proposes to give, may always revoke *before an interest* is vested in the donee. It is clearly unwarrantable to take from any citizen a vested right, a right ' to do certain actions or possess certain things,' which he has already begun to exercise, or to the exercise of which no obstacle exists in the present laws of the land."

And see also *Woart* v. *Winnick*, 3 *N. H.* 473.

But the statute of limitations may be suspended for a period as to demands not already barred. *Cooley's Const. Lim.* 365, *note* 2, and cases there cited.

In all cases where the bar of the statute *had not attached*, the statute of 1879 would no doubt be operative.

But in the case before the court the *bar* of the statute *had*

*attached;* the *right* had become *vested* under the statute. In the language of the court in *State* v. *Keith, supra,* " his vested right to immunity," had attached under the statute of 1874, and the removal of the bar as to the defendant is inoperative. *Wade on Retroactive Laws,* §§ 197, 228.

" Were it deemed competent for the legislature to revive actions already barred, the policy which dictates the enactment of statutes of limitation would be utterly defeated."

And Chief Justice Beasley, in the case of Ryder *v.* Wilson's Ex'rs, speaking of the same subject matter, says : " The products of such a doctrine would be simply injustice and confusion."

Does not the term " vested right " apply equally to the absolute rights of *personal security, personal liberty,* and of property ?

And may not a man's right to the enjoyment of his liberty become *vested* under the operation of a statute, as well as his right to the possession of property ?

Nay, more: Is not a man's right to the enjoyment of his personal liberty *property* in this sense ?

Webster defines property to be *the right to possess a thing,* as well as *the thing owned.*

And Blackstone says (3 *Com.* 190, 191,) one man may have the *possession* and another the *right of possession ;* one man may have the *right of possession* and another may have *the right of property.*

*Sedgwick Stat. and Const. Law,* 661, on the subject of " vested rights," says : " The construction of the great constitutional clauses, (1) in regard to private property, (2) the obligation of contracts, and (3) the right to process of law, is settled with considerable accuracy, but beyond this the subject is *infested* with plain and *painful* contradiction.

" Every sudden alteration of existing rights, duties or relations by the operation of law, as a general rule, tends to insecurity and danger."

Chase, J., in *Calder* v. *Bull,* 3 *Dall.* 394, says : " When I say that a *right is vested* in a citizen, I mean that he has the

power to do certain actions or to possess certain things, according to the law of the land."

Judge Cooley (*Const. Lim.* 358,) says : " The term 'vested rights' is not used in any narrow or technical sense, or as importing a *power of legal control* merely, but rather as implying a vested interest, which it is right and equitable that the government should recognize and protect, and of which the individual could not be deprived arbitrarily without injustice."

Judge Story, in *Trustees of Dartmouth College* v. *Woodward,* 4 *Wheat.* 697, recites various kinds of rights, and says : " A man has just as good a *right to his wife,* as to the property acquired under a marriage contract. He has a *legal right to her society* and her fortune, and to divest such right without his default and against his will, would be as flagrant a violation of the principles of justice as the confiscation of his\ estate."

Blackstone (1 *Black. Com.* 134,) says, " of these absolute rights of individuals, next to personal security, the law regards, asserts and preserves the *personal liberty* of individuals."

And again on page 135, " some have thought that unjust attacks even upon *life* or *property,* at the arbitrary will of the magistrate, are less dangerous *to the commonwealth* than such as are made upon the *personal liberty* of the subject."

*Const. of N. J., art. I., subd.* 1, declares " All men have certain natural and inalienable *rights,* among which are those of *enjoying* and *defending* life and *liberty,*" &c.

Now, in this case two years had expired under the act of 1874 ; the defendant's *right* to " enjoy " and " defend " his liberty had *accrued* and had become *vested* under that statute.

It was a *statutory right* or *defence,* the same as in *Ryder* v. *Wilson's Ex'rs, supra.*

The statute of March 14th, 1879, revokes the right acquired by the defendant under the former statute ; makes that *now* punishable as a crime, which *before,* and at the *time of the passage* of the statute of 1879, was not punishable as a crime, and which a former legislature had declared *should not be punishable* as a crime.

State v. Moore.

After the expiration of the time limited for prosecution of the offence, a man's right to the enjoyment of his liberty and property becomes *vested* as against any *forfeiture* of the same, under the operation of the law thus limited.

It is a *vested right*. Limitation is no more an act of grace in *criminal* than in civil actions.

There is no more limitation at common law for the *prosecution* of a *right* than for *indictment* for a *crime*. *Angell on Lim.*, p. 14, § 5; *Bishop on Stat. Crimes*, § 257; *Dover* v. *Maestayer*, 5 *Esp.* 92; *Williams* v. *Jones*, 13 *East* 449.

And it is submitted that the legal effect is the same in both cases.

And why should not this principle of vested rights extend as well to statutes of limitation relating to *crimes* as to *civil actions?*

It is a statute of *repose* in one case as well as in the other.

If the legislature can annul the bar of a statute which has attached five years after the act, they can for twenty years; and this, too, after the death of the most material witnesses, when the defendant is deprived in this way of the means of defence; and what security could there then be for life, liberty or property?

Every citizen would become liable to be made the victim of the caprice of the legislature, or the machination of a secret enemy.

It is idle to assert that no legislature would so act.

All experience has shown the necessity of imposing restraints on legislative action for the protection of the rights of the citizen.

Mr. Madison (*The Federalist, No.* 44,) says:

" Our own experience has taught us, nevertheless, that additional fences against these dangers ought not to be omitted. Very properly, therefore, have the convention added this constitutional bulwark in favor of *personal* security and *private right*."

State v. Moore.

## II.

But again—as to the second proposition—

The statute of 1874 operates as a *pardon before conviction*, as to all acts barred by the limitation thereof.

*Vide the words of the statute.*

This is not a mere *suspension of the remedy* or *prosecution* after the expiration of two years, so that the same may be revived at the option of the legislature.

It goes further than that: it pertains to and affects the *offence*. It is a declaration that no person shall be *punished* for that *offence*, unless the indictment be found within two years.

It amounts to and is substantially *a pardon* or statute of *amnesty* for that offence.

By our constitution the pardoning power *after conviction* is vested in the governor, Chancellor, and six judges of the Court of Errors and Appeals. *Art. V., subd.* 10.

*Before conviction* it is vested in the supreme or legislative power of the state.

This question was directly raised and so decided in the case of *State* v. *Nichols*, 26 *Ark.* 74.

The constitution of Arkansas is the same as that of New Jersey in this respect.

And see also *Cooley's Const. Lim., p.* 114–117, and notes.

Although the pardoning power in England was vested in the king, a pardon by act of parliament was good.

It is laid down in 7 *Bac. Ab.* 416, "*Pardon,*" *H:*

A pardon, whether by the king, *or by act of parliament,* removes not only the punishment, but all the legal disabilities consequent on the crime.

4 *Black. Com.* 401 :

Pardon by *act of parliament* is more beneficial than by the king's charter; a man is not bound to plead it; the court must, *ex officio,* take notice of it, &c.

In *United States* v. *Wilson,* 7 *Pet.* 163, Chief Justice Marshall, says :

" Pardon *by act of parliament* has the same effect on the case as if the general law punishing the offence had been repealed or amended."

Now as to the *effect* of a pardon by statute of amnesty or otherwise.

In the case of *State* v. *Keith*, 63 *N. C.* 143, which was a case under a statute of amnesty, the court says:

" The effects of a pardon are well settled in law; as far as the state is concerned they destroy and entirely efface the previous offence; it is as if it had never been committed."

It will be observed that the court in that case made no distinction whatever in the *effect* of a pardon, whether granted by executive clemency or by statute of amnesty, holding the result to be the same in both cases.

4 *Black. Com.* 402:

The effect of a pardon is to make the offender *a new man;* to *acquit him* of all corporal penalties and forfeitures *annexed to that offence* for which he obtains his pardon.

By the constitution of the United States the power of pardon conferred on the president as to offences against the United States is unlimited, except in cases of impeachment. *Const. U. S., art. II.,* § 2, *subd.* 1.

In the case of *Ex parte Garland*, 4 *Wall.* 380, the court says:

A pardon reaches *both the punishment prescribed for the offence* and the guilt of the offender, and when the pardon is full, *it releases the punishment* and blots out of existence the guilt; so that in the eye of the law, the offender is as innocent *as if he had never committed the offence.*

*If granted before conviction,* it prevents any of the penalties and disabilities consequent upon conviction from attaching.

*If granted after conviction,* it removes the penalties and disabilities and restores him to all his civil rights; it makes him, as it were, *a new man,* and gives him a new credit and capacity.

So also in the case of *United States* v. *Padelford*, 9 *Wall.* 543,

the court says : " It follows that at the time of the seizure of the petitioner's property, he was purged (by the pardon) of whatever offence against the laws of the United States he had committed by the acts mentioned in the findings, *and relieved from any penalty which he might have incurred.*"

Now, at the expiration of two years from the time of the offence committed under the statute of 1874, *the grant of amnesty* or *pardon* under that statute *attached* to the defendant; that statute declared that the defendant should not be *punished* for any act committed under that statute ; the legal effect was not only to relieve him from any punishment under that statute, but to "*blot out of existence the guilt;* so that in the eye of the law the offender is as innocent as if he had never committed the offence."

Under this view of the legal effect of the words of the limitation statute of 1874, § 113, the case now before the court is precisely the same in all respects as the case of *Hartung* v. *State, supra.*

In that case the statute under which the defendant was convicted was repealed before judgment was passed upon the defendant, without any saving clause in the repealing statute.

That operated as a *pardon* as to all offences committed before the repeal. *Roberts* v. *State,* 2 *Tenn.* 423.

Consequently the defendant could not be sentenced.

Or, in other words, the defendant in that case stood in the same position *legally* (although not in fact) *as if she had committed no crime.*

Here the two years' bar of the statute of limitations has attached ; the same statute declares that in such case the defendant shall not be punished ; that is an act of amnesty or pardon ; and the defendant stands in the same position *legally as if he had committed no crime.*

In that case a statute was passed to restore the punishment to acts committed under the original statute ; which was held to be *ex post facto* as to the defendant in that case.

Here the attempt is made to restore punishment to acts

State v. Moore.

committed under the original statute under pretext of extending the time of limitation, which is *ex post facto as to this defendant.*

No more forcible commentary can be added than the words of Mr. Justice Field in the case of *Cummings* v. *State of Missouri*, 4 *Wall.* 325, *supra:* " The rights of the citizen should be secure against deprivation for past conduct by legislative enactment under any form however disguised. If the inhibition can be evaded by the form of the enactment, its insertion in the fundamental law was a vain and futile proceeding."

And again in the case of *Rich* v. *Flanders*, 39 *N. H.* 305, in the very able opinion of Sergeant, J., in which he reviews the whole ground of retrospective and *ex post facto* laws, their effect and legality, the court holds that " A statute which in *form* affects the *remedy*, or *the rules of evidence*, or of *practice only*, yet practically and *in fact* divests vested rights, is unconstitutional and void."

The question remains whether this pardon, or act, or statute of amnesty, (*Act of* 1874, § 113,) thus given by the state, under the legislative authority, is *revocable*, or in other words, whether the statute of 1879 can affect the *defendant* in whom the grant or act of pardon or amnesty *has become vested.*

1. This question was expressly decided in the negative in the case of *State* v. *Nichols*, 26 *Ark.* 74, *supra.*

2. In the case of *State* v. *Keith*, 63 *N. C.* 143, *supra*, the court says:

" We have searched in vain for any instance in which a parliamentary or legislative, or other act of general amnesty and pardon *has been revoked.*"

3. In the case of *United States* v. *Padelford*, 9 *Wall.* 543, *supra*, the court says:

" We cannot doubt that the petitioner's *right* (by reason of the pardon) *to the property in question* at the time of the seizure *was perfect,* and *that it remains perfect notwithstanding the seizure.*"

4. In the case of *United States* v. *Klein*, 13 *Wall.* 129, the court held that the *repeal* by an act of January 21st, 1867, (after

the war had closed), of the act of July 17th, 1862, authorizing the executive to offer pardon, *did not alter the operation of the pardon,* or the *obligation of congress* to give full effect to it, if necessary, by legislation.

It is respectfully submitted that this last case governs the case now before this court.

## III.

But again—

The statute of 1879 is objectionable because it is not *general* in its operation, but applies to particular persons.

Laws must be *general;* be rules prescribed for civil conduct to the whole community.    1 *Black. Com.* 44.

An act which operates on the rights or property of only a few individuals without their consent, is a violation of privileges guaranteed to every subject.    *Merrill* v. *Sherburne,* 1 *N. H.* 212.

*Cooley's Const. Lim.* 391 :

A statute would not be constitutional which should select particular individuals from a class or locality and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempt.    *Lin Sing* v. *Washburne,* 20 *Cal.* 534.

*Id.* The legislature may suspend the operation of the general laws of the state, but when it does so the suspension must be general, and cannot be made for individual cases or for particular localities.    *Id., note* 2.

The statute of limitations cannot be suspended in particular cases while allowed to remain in force generally.    *Holden* v. *James,* 11 *Mass.* 396 ; *Davison* v. *Johnson,* 7 *Metc.* 393 ; *Bell* v. *Conroe,* 13 *Wis.* 238 ; *Officer* v. *Young,* 5 *Yerg.* 320 ; *Griffin* v. *Cunningham,* 20 *Gratt.* 31 ; *Arnold* v. *Kelley,* 5 *W. Va.* 446.

The rights of every individual must stand or fall by the same rule or law that governs every other member of the body politic or land under similar circumstances ; and every partial or private law which directly proposes to destroy or affect in-

dividual rights, or does the same thing by affording remedies leading to similar consequences, is unconstitutional and void. *Walley's Heirs* v. *Kennedy*, 2 *Yerg.* 554.

It is submitted that the statute in question suspends the statute of limitations in particular cases—that is, as to public officers—while allowed to remain in force generally.

It is aimed at and comprehends a particular class of individuals as *exceptions to the general law*, and is thus open to the objection above referred to.

Therefore, and for all the reasons aforesaid, it is respectfully submitted that the defendant was unlawfully convicted, and that the Court of Sessions should be so advised by this court.

BEASLEY, CHIEF JUSTICE.  By the one hundred and thirteenth section of the criminal procedure act it is provided, among other things, that no person shall " be prosecuted, tried or punished for any offence not punishable with death, unless the indictment shall be found within two years from the time of the committing of the offence, or incurring of the fine or forfeiture aforesaid."  On March 14th, 1879, an act was passed changing this period of limitation from two years to five.

At the trial of this case the counsel of the defendant objected to the reception of any evidence showing the commission of any criminal act of his client at a date prior to the period of two years before March 14th, 1879, and the objection having been overruled exception was taken.  On the part of the state it was then shown that various acts of embezzlement had been committed by the defendant prior to two years before the above-mentioned date, and consequently at a time which was more than two years before the finding of the present indictment.  It will be, therefore, observed that the defendant may have been convicted for an offence the prosecution of which had become barred by the original act of limitations first above cited.  The question, therefore, now to be consid-

ered by this court, on this application for its advisory opinion, is, whether this right to prosecute, thus barred by lapse of time, could be resuscitated by the modifying act passed in the year 1879.

The principal position taken against the validity of this statute which removes the bar of the limitation in question is, that such law is an *ex post facto* law, and is therefore prohibited by both the federal and state constitutions.

But does this act bear the legal character thus imputed to it? It is impossible intelligently to settle this question unless we first ascertain with entire clearness, what is an *ex post facto* law.

These words are technical, and have, and always have had, a fixed and definite meaning in their application to criminal law. In the same sense they were used before their introduction into the federal constitution, by Blackstone and other English writers; by Hamilton in *The Federalist*, and in the resolutions passed by several of the state conventions. Nor do I find that since such occasions, when subjected to judicial exposition, they have had any other signification ascribed to them. The established import of the phrase *ex post facto* law, in the connection in question, is, a law that originates a punishment, or an increase of punishment, for an act already done. It was a legislative power to convert that which was innocent into that which is criminal, and after the transaction to adjudge its culpability and punishment. Referring to the injustice of enforcing laws before their proper promulgation, Blackstone says, " There is still a more unreasonable method than this, which is called making of laws *ex post facto :* when an action (indifferent in itself) is committed, the legislature then, for the first time, declares it to have been a crime, and inflicts a punishment upon the person who has committed it." The case of *Calder* v. *Bull*, 3 *Dall.* 386, is the leading case upon the subject, and it announces the doctrine, and which has been since uniformly confirmed, that the expression *ex post facto* law applies only to criminal laws, and that the phrase as used in the federal constitution declares that the state legisla-

State v. Moore.

tures shall not by statute, "inflict a punishment for any act which was innocent at the time it was committed, nor increase the degree of punishment previously denounced for any specified offence." Before leaving this interesting case it is proper to remark, however, that Judge Chase, in his full and able discussion of the subject, extends the definition of an *ex post facto* law so as to embrace not only those creating or increasing the punishment, but also "every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the time of the commission of the offence, in order to convict the offender." Such a construction obviously expands the constitutional prohibition so as to interdict an alteration by subsequent legislation of a part of the legal procedure in force at the time of the committing of the offence. I am not aware that this view has ever been sanctioned by a judicial decision, but it is important to notice that it originated not in any loose notion with respect to the character or scope of the legislation that was prohibited, but from the consideration that this clause of the constitution was remedial, and that the particular subject over which it was thus sought to be extended was, from special considerations, within the mischief. The learned judge thus summarizes the evil uses to which these laws had been put by the English parliament; he says: "Sometimes they respected the crime by declaring acts to be treason which were not treason when committed; at other times they violated the rules of evidence to supply a deficiency of legal proof, by admitting one witness, when the existing law required two; by receiving evidence without oath; or the oath of the wife against the husband, or other testimony which the courts of justice would not admit; at other times they inflicted punishments where the party was not by law liable to any punishment; and in other cases they inflicted greater punishment than the law annexed to the offence." Conceiving these to be the evils to be extirpated, Judge Chase so amplified the remedy by his construction, as to make it effective against such evils. It should be observed, however, that the view so taken has no tendency to introduce any uncertainty embarrassing to the

present inquiry, with respect to the subjects to which the provision is applicable, for it still applies only to specialized classes of cases.

It is obvious, then, accepting either the wider or narrower exposition of the constitutional clause in question, that it does not comprehend an inhibition against the passage of the enactment now challenged by this defendant. This statute plainly does not denounce a punishment in consequence of any act already done which was not punishable when done; nor does it increase a punishment incident to a past act; nor does it affect the mode of proving the offence. It leaves all these things absolutely as they were at the time of the commission of this crime. All that it does is to modify a matter of procedure. The legislative declaration that a crime of this class should not be prosecuted or punished unless an indictment was found within two years, was beneficial to the defendant as long as the rule existed; but it was a mere privilege, and constituted a part of the public policy, being a regulation of the course of the prosecution of the crime. It neither created the crime, nor in any degree affected its punishment. In order to bring such an act within the category of *ex post facto* laws, the definition of such a law would have to be stretched, so as to take in all modifications of law existing at the time of the doing of the criminal act that have any tendency inimical to the culprit. But there is nothing to justify such a notion. Even if the extravagant assumption should be admitted that it is oppressive to disappoint the expectations of this defendant, arising out of this abrogated law, that he would not be held to answer for crimes of this kind after they had slept, perhaps from being undiscovered, for over two years, yet such admission cannot in any degree affect the subject of inquiry, because the legislature has the undoubted general right to pass retrospective laws, and to decide whether such laws, even if they are harsh, are not necessary for the public welfare. Nor is the circumstance that this limitation existed at the time of the doing of these criminal acts, and that its removal by subsequent legislation has a tendency to increase the risk of pun-

ishment, anything to the present purpose, because such an enhancement of the risk of punishment is not prohibited by the clause under review. The constitution does not guarantee to criminals that their risk of conviction arising out of the modes of their prosecution, shall not be increased by future legislation. Indeed, it seems to run into the absurd for a criminal to assert an indefeasible right as against the legislature, not to be tried or punished for his offences after a specified time, for such a claim assumes the semblance of an assertion that the criminal act was done in reliance on such an expectation. I cannot perceive that the clause in question is a restraint on the legislative power to modify at will any of the regulations of the trial of the offence even in the most essential particulars. But for the presence of another constitutional restriction, the party charged could be deprived even of trial by jury. The rule of procedure that the indictment in matters of this class should be tried within two years, was no more sacred against repeal than many of the other rules designed for the protection of the culprit against possible injustice. In our laws there are provisions that on indictment for the higher crimes, the person indicted shall have a copy of such indictment and a list of the jury served upon him two entire days at least before the trial, and that every indictment shall be tried the term in which issue is joined or the term after, unless the court, for just cause, shall allow further time; and yet, would it be pretended that an act repealing such regulations and operating retrospectively, would be an *ex post facto* law? It is presumed no one would pretend this, and yet their rescission would materially and injuriously affect the interest of delinquents. Laws of this kind are retrospective laws, but not *ex post facto* laws, and they are not, therefore, within the scope of the prohibition in question. The mistake sometimes made is in omitting to notice that an *ex post facto* law is not a law that in a general way alters the old law to the oppression of the party accused; but that it is a law that works oppression in one of three enumerated instances, to wit, when it originates or increases the punishment by retrospective legislation; or

(perhaps) changes the rules of evidence to the detriment of such accused. If the constitutional prohibition forbade any modification of the existing law whose tendency was to increase the party's peril, then, undoubtedly, the present law, as well as many of those which have been judicially sanctioned, could not be vindicated. But that such was not the true doctrine has been very uniformly decided. "The expressions, *ex post facto*," says the court, in the case already cited from Dallas' Reports, "are technical ; they had been in use long before the revolution, and had acquired an appropriate meaning by legislators, lawyers and authors." In *Fletcher* v. *Peck*, 6 *Cranch* 87, 138, Chief Justice Marshall says : "An *ex post facto* law is one which renders an act punishable in a manner in which it was not punishable when it was committed," and Chancellor Kent eulogizes the comprehensive brevity and precision of this definition, (4 *Kent* 409), and this is the definition adopted in the case of *Hartung* v. *People*, 22 *N. Y.* 104, by the Court of Appeals of the State of New York. To the same effect I find the judicial definitions in all the books, and yet it seems certain that these constructions are all wrong, if a law of the kind in question embraces not only the particular cases thus specified, but the present case also, which is the instance of a law reviving the right to prosecute. The time of limitation as originally prescribed, had no connection with the punishment as then prescribed. Such limitation was beneficial to the prisoner, not because it affected the penalty in any respect whatever, but inasmuch as its tendency was to diminish the chances of the discovery of his crime in case of his guilt, or on the assumption of his innocence, to insure a trial while the transaction was fresh in the memory of the witnesses. Such an advantage is similar in kind to the privilege possessed by a prisoner to have counsel assigned for his defence, or to have the right to challenge peremptorily a certain number of jurors, and it has never been supposed that the abrogation by subsequent legislation of such privileges was unconstitutional. This is the principle sustained by the authorities. A subsequent law giving the government additional challenges was adjudged

legitimate in *Walston* v. *Commonwealth*, 16 *B. Mon.* 15, and the same result was reached with respect to a similar exercise of the legislative power authorizing the amendment of indictments in *State* v. *Manning*, 14 *Texas* 402. So also a statute was not deemed objectionable in its application to past transactions by the Supreme Court of Massachusetts, that abolished the common law doctrine of variance. *Commonwealth* v. *Hall*, 97 *Mass.* 570. There are other cases having the same aspect.

Such changes as these are justly regarded as adjustments of the methods of procedure, and consequently as being legitimate exercises of legislative authority, and in this same class the prescription of the time within which a crime shall be prosecuted is placed by Mr. Bishop. On this subject this is the language of this experienced author : "A statute of limitations compels the state to prosecute the crime within a specified period, if at all, by withholding from the courts jurisdiction over the offence afterwards. And it has already been decided, in a case of another class, that if the legislature takes away the jurisdiction so that no prosecution can be had, it may revive the old, or create a new jurisdiction, and then, though the right to prosecute had once lapsed, the prosecution may be carried on under the new law. This is something pertaining not to the right, but to the remedy, and a statute authorizing a prosecution after the period of limitation had lapsed, would seem to come within this principle. It pertains to the remedy. It does not punish an act innocent when committed, or add to the punishment which the law then prescribed."

The authority to which reference is made in this extract is that of *Commonwealth* v. *Getchell*, 16 *Pick.* 452, and the doctrine of which is confirmed in *Commonwealth* v. *Mott*, 21 *Pick.* 492. A judgment was called for on this point : a person had committed certain offences for which he was liable to punishment under an existing statute ; the legislature repealed such statute, and subsequently this repealer was itself repealed ; the question was, whether the culprit could be punished under the original act so revived. The decision was in favor of this exercise of the legislative power, and the criminal was accord-

ingly punished under the act so resuscitated. In that case, as in the present one, there was a period during which the crime could not have been punished under any law, and there seems to be nothing more than a phantastical distinction to be drawn between the revival of a right to prosecute, when such right has been suspended by the revocation of the statute in which it is inherent, and when such effect has been the result of lapse of time under a statute of limitations. In either event, in my judgment, the right to prosecute may be thus restored.

In addition to the foregoing considerations, it is to be remembered that the finding of an uncertainty with respect to the subject under consideration, is to resolve the question involved against the defendant. The power of the legislature cannot be circumscribed except upon sure grounds. Such is the familiar rule of construction. Neither should it escape observation, that to extend the constitutional clause in question so as to embrace the present case, would be to extend it indefinitely; the prohibition would have nothing like settled boundaries; the entire matter would be thrown into confusion. And if it be said that the legislative power exercised in this case is liable to be much abused to the oppression of the citizen, the answer is that this is an imperfection necessarily inherent in all delegations of the law-making prerogative.

Touching the second point raised in the brief of the counsel of the defendant, that the act of limitation had the operation of a pardon of the crimes antecedently committed by the defendant, I think it sufficient to say, that nothing is perceived in this statute which will sustain such a construction. The design of the law is to protect the innocent, and not to absolve the guilty. The bar against prosecution established by it can be taken advantage of by both of such classes of persons, and consequently there is no induction to be derived from the purpose to be accomplished, of an intent to condone an offence. Such a force has never heretofore been supposed to be lodged in such laws. I have not been able to see any plausibility in this contention.

I conclude with the remark that all the authorities cited in

the brief of the defendants' counsel have been carefully examined, and that it is not conceived that any of them are in opposition to the views above expressed.

My conclusion is, that the ruling of the trial judge was correct.

VAN SYCKEL, J., concurred.

DIXON, J., dissented.