Spear, J.
The question presented by the bill of exceptions is: did the court err in the admission as evidence of the written statement purporting to be a dying declaration ?
While some of the statements of the bill respecting the preliminary proof are not couched in the clearest and most positive language, yet it is fairly to be understood that the testimony of the witnesses satisfied the judge that the statement was prepared by one of the witnesses called, under the direction of the deceased; that it was, by one of the witnesses, read over to him, and was actually signed by him, and that, at the time, he was under a sense of impending death, and had no hope of recovery. The paper itself shows that it is a recital of the circumstances immediately attending the assault which resulted in Butt’s death.
It is not questioned that the words used by the defendant, or the substance of them, might have been testified to orally by those who heard them, if they were able to recall them, but it is insisted by counsel for defendant that to admit the written statement of the deceased is to make him a witness in the case, and is a violation of that clause of the constitution of the United States, which provides that every person on trial charged with crime shall have the right “ to be confronted with the witnesses against him,” and of the like clause in our own constitution which provides that in any such trial the party accused shall be allowed “ to meet the witnesses face to face.” It being conceded that what the deceased said is the substantive matter to be given to the jury, the only question is as to the proper mode of communicating from the declarant to the jury.
Dying declarations have been received in evidence on the ground of necessity, there often being no other evidence of the facts attainable, and sometimes on the further ground that the solemn circumstances surrounding the wounded person, in view of impending death, will create an obligation to utter the truth equal, in its influence, to the obligation of *361 an oath, though it is difficult to see why, if the latter is a substantive ground, the declarations should be limited to the facts immediately connected with the killing. Mr. Roscoe, in his work on “ Criminal Evidence,” observes that “ the concurrence of both these reasons led to the admission of this species of evidence.” Such declarations are in the nature of hearsay, and their admission is an exception to the general rule of evidence. It follows from this that the person making them is not, but the person by whom they are proven, is, the witness. Hence, the witness by whom the accused has the right to be confronted, is the one called to lay the foundation for proof of the declaration, and by whom the making of the declaration is established. The object is to give the accused the opportunity to see and hear the witness, and for cross-examination. If these objects are secured the guaranty of the constitution is maintained. Applying these conclusions to the case at bar, how can it be said that the accused was deprived of any right ? In order to intelligently prepare the paper signed by the declarant, it was necessaiy for the witness to first talk with him, or at least, hear his verbal statement. Then, having reduced the statement to writing, he read it to the declarant, and it was then signed by him. All this must have been shown by the witness before the court could have been satisfied of the necessary facts preliminary to the admission of the paper. Being thus testified to, the whole transaction, and every detail, was the subject of cross-examination. The accused could inquire as to just what the declarant actually said; just how much care was taken in writing out the statement; how carefully and distinctly the paper was read to the declarant, and, in short, as to all that was said and done, the order of it, and the manner of it. Whether the accused availed himself of this opportunity or not, the opportunity was present. It is clear that, in this case, the constitutional requirement was complied with, and every constitutional right was preserved to the accused. Where this appears, the only question is, which is the preferable evidence of the actual declarations, the memory of witnesses and their ability to reproduce the words used, or the *362 substance of them, or the paper, reduced to writing at the time and signed by the party making the statement ? Or, to present the exact question in this case, is there such preference to be given the former method as to render the latter improper? We think not. The common judgment of mankind, formed upon observation and experience, is that the attempt to repeat the language of others is always attended with uncertainty. It is in recognition of this fact that the custom has obtained at trials for the judge to caution the jury in weighing and considering testimony of this kind. The witness may not have fully understood the declarant; he may not recollect accurately the words, or their substance; or, having understood and remembering, he may not be able to fully and clearly express himself in their reproduction. At least the written statement, approved and signed by the declarant, is not, ordinarily, open to these objections. Nor can it be said that the paper, so prepared and verified, has not a legitimate tendency to prove the facts sought to be proven; that is, to show what the dying man said.
But if we had doubts as to this conclusion, on principle, we would be impelled to the same result upon authority. The admissibility of dying declarations in cases of homicide, has been recognized by the courts for more than a century, and the question of the form in which such declarations shall be given to the jury has often been under consideration.
In King v. Ely, tried before Chief Justice King, at Old Baily, in 1720, (12 Miner’s Abr. 118,) it was held that “in the case of murder, what the deceased declared after the wound given, may be given in evidence,” and in Trowter’s case, (same authority, 119,) “the court would not admit the declaration of the deceased, which had been reduced into writing, to be given in evidence without producing the writing.” To like effect is Rex v. Woodcock, 1 Leach 500, decided in 1789.
In Rex v. Gray, 7 Car. & P. 230, it was declared that if a declaration in articulo mortis be taken down in writing, and signed by the party making it, the judge will neither receive a copy of the paper in evidence, nor will he receive parol evi *363 dence of the “ declaration,” and Coleridge, J., refused to receive the parol evidence offered.
Under the head of “form of declaration,” Mr. Philips, in his. work on evidence, vol. 1, p. 240, uses the following language: ‘‘With regard to the manner in which a dying declaration may become the subject of legal evidence, it may be observed, that an examination taken on oath by a magistrate, and signed by the deceased and by the magistrate, has been received in evidence as of the same effect, in point of admissibility, as declarations not made with the same solemnity.” And in a note to page 241, occurs this : “Where the statement of the deceased is taken down in writing, it is of course more reliable, more accurate, than the memory of most men; but it is of no higher grade than unwritten testimony.”
Professor Greenleaf, in his work on evidence, section 161, gives the rule that “if the statement of the deceased was committed to writing and signed by Mm, at the time it was made, it has been held essential that the writing should be produced, if existing.”
Mr. Wharton, in his work on criminal evidence, section 295, thus states the rule: “ If the declaration of the deceased, at the time of his making it, be reduced into writing, and then read and approved by him as giving his deliberate view, the written document becomes primary evidence.”
It was held by the Supreme Court of Iowa, in State v. Tweedy, 11 Iowa, 350, that “when declarations in extremis are reduced to writing and signed by the person making them, the writing, if in existence, must be produced as evidence of such declaration.”
The admissibility of competent declarations, so evidenced,has been directly sustained in California, People v. Glenn, 10 Cal. 32; in Texas, Krebs v. State, 8 Texas Ap. 1; in Arkansas, Collier v. State, 20 Ark, 36; in Mississippi, Merrill v. State, 58 Miss. 65; in Alabama, Kelly v. State, 52 Alabama, 361; in South Carolina, State v. Ferguson, 2 Hill, 619; in Kentucky, Mockabee v. Commonwealth, 78 Ky. 380; in Indiana, Binns v. State, 46 Ind. 311, and in Wisconsin, State v. Martin, 30 Wis. 216. And, inferentially in Tennessee, Ep *364 person v. State, 5 Lea (Tenn.) 291; and in Massachusetts, Commonwealth v. Haney, 127 Mass. 455. That such written statements are not admissible as depositions has been several times held, as in the last named case, but if there are any holdings against their admissibility under the general head of dying declarations, our attention has not been called to them, nor have we found such in an extended search of authorities. At all events there is, beyond doubt, a marked agreement in favor of their admissibility.
It is insisted that the written statement was a deposition, and that, as there has been no statutory provision, and, under our constitution, could not lawfully be such provision for the taking of depositions for the state, the paper, on that ground, was inadmissible. But is it a deposition ? In a certain general sense, any written statement, signed by a person, containing assertions of fact, may be treated as his deposition, and the term has been sometimes used in this sense by law writers and judges. In law, however, its accepted meaning is limited to the written testimony of a witness reduced to writing in due form, by virtue of a commission or other authority of a competent tribunal, upon notice, or according to the provisions of some statute law. Besides, the scope and subject-matter of a deposition and a dying declaration may widely differ. A paper competent to be received in evidence as a deposition, may be received in any case in which it is taken, and may contain statements as to any facts to which the witness, if on the stand in court, could have testified; a paper competent to be received as a dying declaration, is receivable only in a case where the death of the deceased is the subject of the charge, and, is limited in its statements, to declarations respecting the immediate cause of the death. Again, a deposition, duly taken, proves itself; a paper containing a dying declaration must be identified and established by oral proof. This paper does not purport to be a deposition. It was not offered as a deposition. It has nowhere in these proceedings been treated as a deposition. We think it cannot be now regarded as such.
Again, it is urged against the admissibility of this state *365 ment, that, “ as our experience teaches, there are many men who in the hour of death do not have the fear of God before their eyes, are filled with malice, hatred and anger, which go out only with their lives, and are buried with them in their graves, and with whom a consciousness of impending death moves to a desire for revenge; and that such declarations, in a majority of cases, are prompted by such desire.” But against this objection may be quoted the observation of Chief Baron Eyre, in Woodcock’s case, supra, to the effect that these “ declarations are made in extremity, when the party is at the point of death, and when every hope of this world is gone; when every motive to falsehood is silenced, and the mind is induced, by the most powerful considerations, to speak the truth; a situation so solemn, and so awful, is considered by the law as creating an obligation equal to that which is imposed by a positive oath administered in a court of justice.” However, it is manifest, that whatever force there may be in the objection, it goes to the weight of the testimony, and not to its competency, and would be just as forcible, if not more so, against the admission of declarations proven by word of mouth.
We are of opinion that in cases of homicide, a statement of the injured person made in extremis, while conscious of his condition, and under a sense of impending dissolution, reduced to writing by a competent person, at the instance of the declarant, or with his consent, approved and signed by him, containing statements of the circumstances of the unlawful act which results in death, after proper preliminary proof has been introduced, is admissible in evidence. Whether or not such paper is primary evidence in the sense that parol evidence of the declarations will not be received until the absence of the paper is accounted for, we are not called upon to determine.
It follows that the court of common pleas did not err in admitting the written statement of Thomas Butt in evidence, and that that court did err in sustaining the motion for a new trial by reason of the introduction of the written statement.

Exceptions sustained.